Moore & Miller v. Stovall.

Jas. T. Moore and W. S. Miller v. Geo. A. Stovall.

Statute of Frauds. *Promise.* Case: J. bought a tract of land of M. and M., for which, as part payment, he executed a note for $2,680. A lien was retained on the face of the deed for the payment of the purchase money. J. afterward sold the land to S., who paid a part of the consideration in cash, and the deed recited that "in further consideration of this conveyance S. assumes the payment of the $2,680 note" executed by J. to M. and M. Upon suit brought by M. and M. against S., *Held,* that plaintiffs could recover, and that the promise was not within the statute of fraud.[*]

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby county.   C. W. Heiskell, J.

Humes & Poston and M. P. Jarnagin for Moore and Miller.

H. Craft and J. M. Gregory for Stovall.

Turney, J., delivered the opinion of the court.

The statute which provides that no action shall be brought whereby to charge a party upon a special promise to answer for the debt, default, or miscarriage of another, unless such promise or agreement be in writing, etc., does not, in the opinion of a majority

---

[*] This case was heard in 1877. A rehearing being granted, it was again argued and determined at the last term of the court. The opinions of the judges upon the first hearing, as well as the opinions upon the rehearing, are published.—Reporter.

of the court, apply to the facts of this case, and can in no way effect it. The land was bought at a stipulated price, to be paid at stated times, one of the payments to be made to Moore & Miller. While it is true the vendor was indebted in that sum to Moore & Miller, and such indebtedness was the inducement moving him to have the defendant undertake to pay to Moore & Miller, still it was nevertheless an undertaking by the defendant to pay his own debt, and not the debt of the vendor of the land, and although the payment, when made, would have the effect to discharge the vendee's obligation to Moore & Miller, yet that indebtedness would be in no manner changed or altered before the payment. The defendant undertakes and promises alone for himself for a valuable consideration. He was satisfied with the price, and it can make no difference to him to whom he shall pay it, so he complies with the terms of his own contract. By his contract he created an indebtedness from himself to Moore & Miller, and should not be heard to gainsay it. We think the case of *Campbell* v. *Findley*, 3 Hum., 330, is unsustainable, and must be overruled.

Reverse the judgment.

McFARLAND, J., said:

I concur in the conclusion that this case is not within the statute of frauds. I entertain some doubt as to whether this plaintiff can maintain an action at law for want of privity of contract with the defendant, but it may be that this distinction between a

remedy at law or in equity ought not to be longer maintained.

DEADERICK, C. J., delivered a dissenting opinion, in which Sneed, J., concurred:

I do not concur in the opinion of the majority of the court. The plaintiffs sue the defendant at law to recover the balance due upon a note executed by Moses E. Johnson to them. They sold and conveyed to Johnson a tract of land in Arkansas, retaining a lien, and took several notes, amongst others, one for $2,680.22, payable January 1, 1860.

This deed from the plaintiffs to Johnson was made in September, 1857. In December, 1860, Johnson sold and, by deed of that date, conveyed to defendant, Stovall, the same tract of land, also retaining a lien for unpaid purchase money. This deed recites that "the said George A. Stovall assumes the payment of a note for $2,680.22, drawn by said Moses E. Johnson, and dated September 1, 1857, payable to James T. Moore and William S. Miller, on the 1st of January, 1860, on which is credited $1,000 May 22, 1860."

The said note, as the deed recites, "was executed in part payment of said land by said Johnson to Moore & Miller, and is now in the hands of W. K. Poston, to be delivered to said Moore & Miller when they make a perfect and valid title to said land, and not till then; and it is expressly agreed and understood that said Stovall is to stand in the shoes of said Johnson as to this note, and is not to be bound

for its payment until the compliance with said condition." This deed, containing the above recitals, was signed by Johnson and his wife only.

In January, 1861, Stovall and wife conveyed the same land to John B. Cobb, and in describing the land refer to it as being the same land conveyed by Moore & Miller to Johnson by deed dated in September, 1857, and by Johnson and wife to him, Stovall, by deed dated December, 1860, but no reference is made to any purchase money remaining unpaid which Stovall was bound to pay. The Circuit Judge charged the jury that there was no competent evidence to sustain the plaintiff's claim, and the jury found for defendant, and plaintiffs have appealed to this court. The instructions of the court were founded upon the absence of any written agreement or promise by Stovall to pay the debt of Johnson. Our statute of frauds and perjuries provides that "no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized." Code, sec. 1758.

The debt for which it is sought to hold Stovall liable is one due by note from Johnson to Moore & Miller. There is certainly no written promise by Stovall, signed by him, to pay it, and the case is clearly within the provisions of the statute of frauds,

and the principles of the case of *Campbell* v. *Findley*, 3 Hum., 330, which has been followed and approved by this court.

In this case Johnson owed Moore & Miller a debt evidenced by note, for which a lien was retained in their deed to him. It is not pretended that this lien, or the liability of Johnson to Moore & Miller, was released; both the liability of the note and the lien for its payment are still subsisting, and whatever verbal promise was made by Stovall, if any, to pay the debt of Johnson, was a collateral promise to Johnson to pay his debt, and this case falls within the principle of *Campbell* v. *Findley*, 3 Hum., 330, and the promise, to be binding, must be in writing. Johnson, in his conveyance, also retains a lien upon the land conveyed to Stovall to secure this very debt, which is still due him from Stovall, and for which Johnson has a right to sue him, and the effect of the holding of a majority of this court is to decide that Stovall owes both Johnson and Moore & Miller.

The judgment of the circuit court was, in my opinion, correct, and ought to be affirmed.

Upon the rehearing FREEMAN, J., delivered the following opinion:

Moses E. Johnson bought a large tract of land in Arkansas in September, 1857, from Moore & Miller, the plaintiffs in this case, for which, as part payment, a note for $2,680 was executed, due January, 1860; a lien was retained on the face of the deed for the payment of the purchase money. December, 1860,

Johnson sold this land to defendant Stovall for eleven thousand dollars, part paid and balance agreed to be paid. A deed was made by Johnson and wife to Stovall containing the following recital: "In further consideration of this conveyance, George A. Stovall assumes the payment of a note of $2,680," describing it precisely as the note given by Johnson to plaintiffs, adding that there was a credit of $1,100 on the same, and that it was given as consideration for this same land.

There were various covenants and conditions in these deeds referred to, but they are not necessary to be noticed, as the Circuit Judge is understood to have decided the case by charging the jury that there was no evidence on which plaintiffs could recover, the suit being by plaintiffs on the above facts in the counts of the declaration on the case stated. There being no evidence to sustain the common counts, the case stands on the action of his honor, and raises the direct question as to whether the plaintiffs can sustain an action on the promise made by Stovall to Johnson to pay and discharge the amount due on the note of Johnson to them as part of the consideration for the lands purchased by Stovall from Johnson, and that upon the evidence of the recital in the deed received by Stovall, and under which he held and claimed the land.

It is doubtful whether this case ought to be decided on this question as it stands, as we think it would have to be reversed on charge of his Honor, under rules well settled and acted on at this term,

that this charge was, on the facts of the case, invading the province of the jury.

Passing by this, however, as the question is one that will ultimately have to be settled by this court, it may as well be settled now as at any other time. An opinion was delivered by a majority of the court at a former term of the court, holding the action could be maintained, overruling the case of *Campbell* v. *Findley*, 3 Hum., 330. A rehearing was granted, and the question is whether that ruling shall be sustained. The question turns, so far as the principle involved is concerned, on whether this contract is within the statute of frauds, and therefore required not only to be in writing, but signed by the party to be charged, and also made direct to the party suing on it. The clause of the statute, Code, sec. 1758, and sub-sections, on which the question is raised, are as follows, "no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized. This statute seems so plain as to admit of but little difficulty in ascertaining its meaning, but in fact seems to have given rise to as much contrariety of opinion as any one question in our law. It was intended evidently to require all promises guaranteeing or becoming responsible for the promise of another to be in writing, and signed by

the party sought to be charged.   If this be its mean-
ing, the sole question would be, is this such a prom-
ise, that is, does it promise to answer for the debt,
default, or miscarriage of Johnson, or is it a promise
to be responsible for the debt of Johnson, the precise
undertaking by which he was bound, in the event he
failed to perform it, or was it in any proper sense
the promise of Stovall to do what Johnson had agreed?
Is it a promise or undertaking by which he becomes
a party by verbal promise to the contract of Johnson,
or, in other words, has it any connection whatever, as
a promise, with the contract of Johnson to pay Moore
& Miller, or is it a separate, independent contract
of his own, based upon a different consideration, made
years after the first?   That this last is the true na-
ture of the contract is evident, we think, from a
slight analysis of the transaction.   The contract of
Johnson was the purchase of this same land, made in
1857.   The note of Johnson was given as part pay-
ment for the land, and was to be paid January, 1860.
That contract stands to-day against Johnson, and is
not in any way affected by the contract of Stovall
now in controversy.   The time of its falling due had
passed, and it stood as a complete and perfected lia-
bility at the date of the new contract between Stovall
and Johnson.   It stood on its own terms, and was
based on its own consideration, not a word of which
was modified, or could have been, by the contract be-
tween Johnson and Stovall.   Stovall did not agree to
become party to this contract, nor bind himself by
its terms, nor on the consideration upon which it

rested. His contract was an independent one like the first, that is, for the purchase of the same tract of land, but from a different party, and might as well have been for the purchase of a different tract of land entirely, and would in that case have stood precisely on the same footing as the present promise. This being the true state of the case, it is not the case of a promise to answer for the debt of another, but to answer in a particular way, and to a third party for his own debt, there and then created, based upon a new and valuable consideration then and there received. That this is the true meaning of what was done we cannot doubt. If so, then it cannot be a promise to answer for the undertaking or debt of another, that other's undertaking being already complete, and standing on its own terms, an independent consideration. In short, Stovall's undertaking is to pay his own debt, it is true to another party, but still his own debt is what is promised to be paid, and this the essential, substantial element of the contract, as made by the parties. The two contracts, as such, are entirely separate and distinct in all their essential features. They are payable at different times, between different parties, based on different considerations, and for different purposes. Johnson's contract was to pay Moore & Miller for the land purchased by him from them. Stovall's contract is to pay Johnson for the land purchased by himself from Johnson, and compliance with it discharged his own obligation, and such was the intent and meaning of the parties. The fact that by so doing he would also in effect appropriate the

money due from him to Johnson, so that it would discharge a debt of Johnson's, cannot change in the least the essential nature of the undertaking, or make it a promise to answer for the debt of another. The case would be within the statute if it was that "no action shall be brought to charge a party on a promise to pay his own debt to a third party at the request and by contract with the party to whom the debt is due." Such language would have precisely met this case, for the promise is simply to pay his own debt by delivering the money to a third party, and, we take it, would have been equally good if no debt had existed between Johnson and Moore & Miller. In fact it is in effect nothing more than an assignment of the debt due from Stovall to Johnson to Moore & Miller. Suppose Moore & Miller had brought this suit in the name of Johnson for their use, can there be any question that they could thus have recovered the money? Could Stovall have interposed any objection to such transfer of the debt, or such a means of recovering it, even though there had been no contract on his part so to pay it? If this be true, certainly he cannot be in better condition to object, where he has contracted so to pay. But this well illustrates the precise question as to whose debt this is. Had such a suit been brought, would it not have been a suit against Stovall to enforce his own debt, and the recovery of a judgment would have simply changed its form into a debt by judgment instead of one by verbal promise. The payment of this judgment would have but been a discharge of

his own debt, nothing more.    The fact that the parties had agreed that when such payment was made it should be appropriated to and discharge a debt from Johnson to Moore & Miller, would not in the slightest degree have changed the result or given a different character to the transaction.    If this be correct, it would seem to follow that the contract, as a subsisting liability, may be legally enforced in one form of proceeding on the footing of a debt of Stovall's, and in another must be held a contract to answer for the debt of another party.    It certainly cannot be maintained that the same contract is both a debt of Stovall's and a collateral liability to answer for the debt of another party.    It is the debt that is contracted to be paid, it is that which is sought to be enforced by this action, the debt due by Stovall for the land purchased, and not a promise to pay the debt of Johnson to the plaintiffs.    If they recover, the appropriation of the money is agreed on, and that will discharge the liability of Johnson to plaintiffs, but that is a result of receipt of the money due Johnson from his debtor, but is not the promise sued on in this case.    Suppose it had been a debt due by Johnson, not by note, but by account on the books of Moore & Miller, which Stovall had agreed to pay, as he has in this case, and Stovall had so paid the amount of money agreed on, but the parties receiving the money had appropriated it to a different debt due them, would such a payment not have discharged Stovall's debt to his vendor for the land?    Most assuredly it would.    If so, it must follow, because it was

his own debt, and he has discharged his own liability. Whether Johnson's liability was discharged or not by the proper appropriation of the money by the parties receiving it, would make no difference in the result. If this be correct, it would seem to follow necessarily that this promise is not a promise to answer for the debt of another, but simply to pay the debt of the promiser. We might add other illustrations, but deem these sufficient.

Assuming the correctness of the views we have presented, the only question that remains is the effect to be given to certain decisions on this question holding to the contrary. It is proper, however, to say here that we have not gone into a review of the authorities outside of our own State, and shall not do so for the reason that we frankly concede that numerous cases may be found on both sides of this question; we believe the larger number of the cases will be found agreeing with the views we have maintained, but frankly say that on such a question we do not feel the force of mere numbers in decisions. The weight of reason is far more important to right views than the fact that a thing has been repeatedly said or often conceded.

We come now to our decisions. *Erwin* v. *Waggoner & Sullivan*, Cook, 400, is a case where an account existing against one party was, by the direction of Erwin, charged to himself on the books, he being indebted to the original party. Erwin was sued, and the court, in an opinion of about seven lines, holds it was within the statute of frauds. Mr.

Meigs, in his Digest, p. 540, suggests a doubt of the correctness of the holding.     The case of *Catron* v. *Warner & Brown,* 1 Col., 368, states a different doctrine, as laid down by Judge Wright, and says "it is perfectly competent for a man to assume on sufficient consideration to pay the debt of another.     Thus a promise by A. to B. to pay a debt due from B. to C., is not a promise to pay the debt of another within the statute of frauds." This case shows that the views of the judges of this court have not been uniform on this subject, to say the least of it.     The case of *Campbell* v. *Findley,* 3 Hum., 330, is a case that holds directly against the view we have taken. In that case Smith had sold his crop to Campbell, and Campbell agreed with him, as part consideration of the contract, to pay a note due from Smith to Findley.     Findley sued on this contract, and the court held the promise within the statute.     The reasoning, with all deference, seems most unsatisfactory.     This learned judge says, "now if no debt had been due from Smith to Findley, and Smith had made one with an original contract of the kind specified, a question could not have arisen upon the statute of frauds and perjuries, and the only question would have been as to Findley's right to sue thereon in his own name; but there being a debt due, the promise of Campbell is collateral, and this whether made to Smith for Findley's benefit, or to Findley himself." We simply think this statement is a distinction without a difference, nor can we see how the one could be more in the statute than the other.     In both cases it is

but an agreement to pay the price of the crop pur-
chased, and is not different in principle, because in
paying it to a particular party he thereby discharges
a debt which is owed by the vendor. The court, in
the above case, add that if "Smith had given the
money to Campbell to pay Findley, or delivered him
the corn for the same purpose, Campbell would have
been Findley's agent, and Findley .could have recov-
ered against him as his bailee. How there can be
any difference in the principle involved in the act of
giving the money to Campbell, and allowing him to
retain it when due for the same purpose, we are un-
able to see. We cannot assent to the correctness of
the conclusion of the court in that case. It has been
followed without discussion, we believe, in one case
by this court.

Holding the decisions referred to not to be in ac-
cord with sound principle, the only question is, whether
they should be overruled or remain simply because
they have been made. We think they should be
overruled and the rule of law established on a sound
basis. Several considerations lead us to this conclu-
sion. The question is not one on which rights of
property depend, nor will titles be in the slightest
affected by it. It will, in our judgment, give us a
rule on the subject, not only in accord with sound
principle, but be in accord with other principles of
our law, well settled, on which we habitually act.
For instance, it is beyond question that in a court
of equity the law has been long settled that "where
a vendee has sold the estate without notice, if the

purchase money has not been paid, the original vendor may proceed against the estate for his lien, or against the purchase money in the hands of the purchaser for satisfaction." Story Eq. J., vol. 2, sec. 1232. That is this precise case, with the additional fact that here the purchaser has expressly contracted the money shall be paid by him to the original vendor, which makes a much stronger case. The principle in such cases is, that the party has money in his hands which he cannot conscientiously withhold from the other party. *Ib.* 1255. This is the law in a court of equity, but why not in a court of law when the action of *assumpsit,* an equitable action in such cases, entitles the party to recover that which he equitably ought to have? Again, as held at this term, and in numerous other cases, you may prove a parol contract of an endorsee, different from the one implied by law from the fact of writing the name on the back of the paper, and thereby charge the endorser. What is this but by parol to prove a contract to assume for the debt of another, based on a sufficient consideration. See *Olivia Taylor* v. *Harbert,* MS.

Lastly, it attains the justice of the case, and can do no harm to any one to enforce the solemn contract of a party, based on a valuable consideration, received and enjoyed by him. In a case like the present there can be no uncertainty as to his promise. It is in writing, though not signed by him, yet it is in the deed under which he holds the land, and which he thereby adopts, and should be estopped by this in

Moore & Miller *v.* Stovall.

common honesty from refusing to perform a stipulation thus solemnly entered into. While we would not hastily overrule a case decided either by our predecessors or ourselves, yet when we see them clearly wrong in our judgment, we do not hesitate in proper cases to say so. In this way alone can errors in our decisions be corrected. To say they must stand, is either to assume that all that has been held heretofore is correct, which involves infallibility on the part of courts, or that errors, when once made and published, shall be held as sacred as truth. To this I am unwilling to assent. I hold the petition should be dismissed.

Cooper, J., delivered the following opinion:

This case, involving a question under the statute of frauds, was decided at a former term, the opinion delivered by Judge Turney being reported in Legal Reporter, 153. A rehearing was granted, and the cause again argued at an early day of the term. The conclusion on the former hearing was only reached by overruling *Campbell* v. *Findley,* 3 Hum., 330. Chief Justice Deaderick delivered a dissenting opinion, concurred in by Judge Sneed, in which, while conceding the conflict of authority on the point involved, he thought our own direct adjudications ought to be followed. In this conclusion I concur, in view of the fact that these decisions commence with *Erwin* v. *Waggoner,* Cook, 400, a case decided in 1813, and have continued in an unbroken current for two-thirds of a

century. There can be no stability in our judicial system if we overrule a settled course of decisions, because new judges differ with their predecessors on doubtful points of law. A majority of the court, however, after full consideration, are of opinion that the former decisions were wrong, and that no progress can be made in law as a science unless errors, when discovered, are corrected.

The judgment in this case will, therefore, be reversed, and the case remanded for a new trial.