BEDFORD COUNTY and RUTHERFORD COUNTY *v.* NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY CO.

1. CONTRACT. *Consideration.* Where the charter of a railway company provided that its road should not be run so near an existing turnpike as to injure it, without the consent of the turnpike company, the consent of the latter company—the road being actually located in pursuance of the agreement—was a sufficient consideration to support a promise by the railway company to assign stock in its road in payment therefor.

2. LACHES. *Delay.* An agreement was made between a railway company and a turnpike company in 1848, whereby stock in the former was to be transferred to the stockholders of the latter company in payment of the damages done the turnpike by the location of the railroad. In 1851, the railway company directed its officers, by an order on its books, to issue such stock certificates to the turnpike company, or its stockholders, as they were entitled to, under said agreement. In 1856, the railway company, by an order on its books, directed the certificates to be issued as provided by the agreement. In 1872, such certificate was issued to one of the turnpike stockhold-

Bedford and Rutherford Counties *v.* Railroad Company.

ers under the contract of 1848. The certificates not having been issued to the complainants—who were turnpike stockholders—they filed a bill in 1879 to compel the issuance of the certificate for such stock. The defendants pleaded lapse of time, the altered circumstances of the parties, and laches, but it was—

*Held:* (1.) The order entered on the books of the company in 1851. was an equitable appropriation of the stock to the parties indicated,

(2.) The railway company, having recently (in 1872), recognized its obligation to transfer the stock, cannot resist the claim on account of its staleness.

(3.) The agreement, having been recognized by the obligor as to one of the parties, will be enforced in favor of all having rights under it.

3. Contract. *Mutuality.* Inasmuch as the turnpike stockholders did assent to the agreement of 1848, and consent to take the stock which it provided should be issued, the fact that they were not bound, by the *terms of the agreement,* to accept it, is not sufficient to support the defense of a want of mutuality.

4. Contract, form of. A contract made by two companies under their seals for the benefit of the stockholders of one of the contracting companies upon the one side, may be enforced by such beneficiaries.

---

FROM BEDFORD.

---

Appeal from the Chancery Court at Shelbyville. Jno. W. Burton, Ch.

Avant & Childress and Cooper & Frierson for complainants.

Whiteside, Bearden and East & Fogg for defendants.

Deaderick, C. J., delivered the opinion of the court.

On January 16, 1879, the complainants filed their bill in the chancery court of Bedford county.

The bill alleges that defendant was incorporated by the Legislature of Tennessee in December, 1845, for the purpose of constructing a railroad from Nash-

ville to Chattanooga; that under said act the company was organized, and the road constructed through the counties of Davidson, Bedford and Rutherford to Chattanooga; that by the 22nd section of their charter it was provided that "the said company shall have the right, when necessary, to construct the said road, or any branch thereof, across or along any public road or water-course, provided that the said road, and the navigation of such water-course, shall not be thereby obstructed; and provided further, that said railroad shall not be run so near any turnpike road as to injure or prejudice the interests of the stockholders in such turnpike road, except upon such terms as may be agreed upon by the president and directors of the same on behalf of the stockholders."

It further appears, that in 1831, the Legislature of Tennessee incorporated the Nashville, Murfreesboro & Shelbyville turnpike company. Under this act a company was organized, and the turnpike road constructed from Nashville to Murfreesboro, and thence to Shelbyville. This road was finished and in use, taking tolls and paying dividends before the railroad was chartered, and the counties of Davidson, Rutherford and Bedford had each become stockholders therein; the county of Rutherford to the amount of $3,347.50, entitling the county to 33 47½-100 shares of stock of $100 per share, and the county of Bedford had invested in said company $4,771.00 in stock at $100 per share, entitling said last-named county to 47 71-100 shares of the stock in said turnpike company.

It is further alleged, that during the survey of the route of said railroad, it became apparent that the railroad would cross the turnpike at several points, and run parallel with it, and so near to it at others as to greatly injure and prejudice the stockholders and inconvenience the traveling public. The directors of the turnpike company seriously objected to the line surveyed by said railroad company, and demanded damages in behalf of the stockholders if the railroad company persisted in locating and building their road so near to the line of said turnpike company. To avoid litigation, and in order to settle and adjúst their differences amicably, the directors of the two companies entered into a written agreement, which was signed by the presidents and secretaries of the respective companies on the 19th day of July, 1848, under their corporate seals.

This agreement recites that it is probable that the railroad company will so locate their road as to cross the turnpike company's road at one or more points, not more than three, between Nashville and Murfreesboro, and in such manner as occasionally to run parallel with the turnpike road, but not to run nearer than three hundred yards in Davidson county, except where the railroad crosses the turnpike, etc., whereby damage may accrue to said turnpike company.

It is then stipulated that said railroad company may run its road in the manner above set forth, and in consideration thereof said railroad company agrees, in case the said railroad shall be so run, to give to the stockholders in said turnpike company twenty-five

dollars in stock of the said railroad company upon each share of turnpike stock in said company, to be assigned whenever said railroad company shall commence running its cars upon its road for profit.

It is further agreed, that said turnpike company in no manner binds itself or the individual directors, nor do the individual directors of the turnpike company bind themselves that their stockholders shall receive this twenty-five per cent. in lieu of damages, but it is understood that any objecting stockholder of the turnpike company, who does not accept of this arrangement, is not to receive the twenty-five per cent. in lieu of damages, nor stock to that amount. It is also understood that the railroad company is not bound to locate its road as above specified unless it chooses to comply with this agreement.

It is further agreed that the railroad company may, at its option, assign the twenty-five per cent. stock above provided for, either to the turnpike company, for the benefit of the stockholders who may not dissent, or to the stockholders themselves who may not dissent from this arrangement.

The turnpike company binds itself as far, in regard to the question of damages to the turnpike company, as they are authorized by their charter and the charter of the railroad company to do, provided the railroad company may have as many turnouts and stations as they may deem necessary or advisable.

The above are the material stipulations of said contract or agreement.

The bill, after setting out said contract in full,

34—VOL. 14.

further· alleges, that said railroad company did locate and build their said road so as to run through the counties of Davidson and Rutherford in such a manner as to cross the said turnpike at three different points between Nashville and Murfreesboro, and at one point between Murfreesboro and Shelbyville, and also to run at several points parallel with said turnpike, and have established stations at five or six points between Nashville and Murfreesboro.

It is further alleged in the bill, that after the completion of said railroad, all the stockholders in said turnpike company, including the State and the counties of Davidson, Rutherford and Bedford, accepted the twenty-five per cent. of stock in said railroad company in lieu of damages sustained by said turnpike company, and certificates were issued by said railroad company to the individual stockholders.

It is also alleged that the railroad company recognized the rights of complainants to certificates of stock in their company, and agreed. to issue them, but have recently refused to do so, although on the books of said railroad company, years ago, it appears the right was settled in accordance with said agreement. Complainants pray that said railroad company be compelled to issue the certificates for the amount of stock they are entitled to in said company, or for its value, if not entitled to specific performance.

Complainants charge that the name of said railroad company has been changed to "Nashville, Chattanooga & St. Louis Railway Company," and that they afterwards "watered" their stock, giving three shares

of the same for one of the original stock, and they claim to have their stock increased in the same proportion, and claim also dividends heretofore declared by said company.

The defendants demurred to the bill, assigning numerous grounds of demurrer. The demurrer was overruled, and respondent filed its answer, admitting the allegations of the bill in respect to the charters of said two companies and the execution of said contracts, and that said roads were built as stated, but does not admit that the complainants were stockholders, as stated by them, in the turnpike company, nor that the crossing and running parallel with said turnpike by said railroad was an injury, nor that certificates of stock had been issued to the individual stockholders, and denied complainants' right to such certicates, and deny that they, years ago, recognized the right of complainants to such stock.

Respondents rely upon the lapse of time, the altered circumstances of the parties since the execution of the contract of July 19, 1848, the laches of complainants, the statute of limitations of six years, and that complainants have stood by and allowed dividends to be paid on their stock without making claim for —— years, and it would be inequitable and unjust to allow them now to come into the company as stockholders.

The chancellor decreed that complainants were entitled to a specific performance of the contract of July 19, 1848, and as to dividends on their stock the question was reserved. And defendant appealed from said decree to this court.

The Referees reported in favor of the affirmance of the decree, except as to dividends, which they recommend shall be disallowed, and the defendant has excepted to the report. The exceptions raised most of the issues tendered by the demurrer, which was overruled, and which defendant was allowed to insist upon in its answer.

The first exception is, that the contract set out in the bill was without consideration.

The contract is that entered into on July 19, 1848. The railroad company had no right to run its road so near to the turnpike as to injure it. This it was prohibited by the 22d section of its charter from doing, without a contract or agreement to allow it by the turnpike company. The surrender of this right of restraint upon its location was a sufficient consideration to support a promise by it to assign stock in its road. All the individual stockholders accepted the terms and received their certificates of stock, and the turnpike company allowed the railroad company to locate the road as designated in the contract, and complainants were also willing to receive their certificates, and never refused to do so.

The second exception is, because the claim of complainant is stale, and the laches so gross, and the lapse of time so great, as to be fatal to their claim.

It is shown in this case that the complainants, before 1853, had performed their part of the contract; that defendant was in the unmolested use and enjoyment of the rights conferred on it by the contract, and that the complainant applied to the defendant for

a certificate of stock in compliance with their obligation. It also appears that defendant recognized the right of complainants to the stock, and to certificates therefor, and by an order, entered upon their books in 1856, directed that certificates should issue therefor. It further appears that it was directed by orders entered upon defendant's books at other times, that the certificates should issue to the said stockholders in the turnpike company.

The counties of Davidson, Rutherford and Bedford were embraced in the contract of July 19, 1848, by its express terms. Their rights stood upon precisely the same footing. All their claim was derived from said contract. And in 1872, defendants, recognizing their liability under said contract, issued to the county of Davidson the shares of stock to which said county was entitled under the contract of 1848, thus recognizing the validity of said contract. It will be observed nothing remains for complainants to perform under said contract. Perhaps before 1849 they had done .all they were bound to do, defendant had taken possession of the road-bed which was conceded to it, and in May, 1851, the defendant had directed its president and secretary to issue and deliver to the turnpike company, or to the stockholders of said company, as may be agreed upon, the number of shares of stock said company is entitled to, under compromise, in satisfaction of their claim for damages. This was entered on the books of said railroad company, and was an equitable appropriation of so much stock to the parties indicated.

In 1 Dana, 344, it is held, a party who has re-cently recognized his obligation to convey, cannot resist the claim on account of its staleness. That was a case of recognition in favor of a party other than, and in fact hostile to, the party having the claim, which was saved by the recognition of the bond about thirty years after its execution; the principle being, if the bond is recognized by the obligor as valid, it will be enforced in favor of all having rights under it.

We hold this exception, No. 2, is not well taken, and it will be disallowed.

The third exception is, that the essence of the contract being money damages, the agreement to pay stock in lieu cannot be enforced.

The obligation is a bond under the seals of the respective companies binding defendant to assign stock. It is in no sense an obligation to pay damages to be ascertained.

The fourth exception is, that there was no mutu-ality in the contract, the stockholders of the turnpike company not being bound.

The contract provided if they did not assent they were to receive no stock, if the railroad should be located as indicated. The railroad was so located, and the stockholders did all assent.

The fifth exception is, that the contract should have been made by the turnpike company and the railroad company, and it was indefinite, no time fixed for turnpike stockholders to accept, etc.

It is a sufficient answer to say, the terms were accepted by the stockholders of the turnpike company,

the railroad company availed itself at once of the benefits secured to it, and issued its stock certificates, under the order of its board, to all the individual turnpike company stockholders, and to Davidson county. The contract was between the companies under their seals, and for the benefit of the turnpike stockholders and the railroad company.

The sixth exception is, that a specific performance of a contract for shares of stock in railroad companies will not be granted, unless the possession of the stock itself was of the essence of the contract, and here only money damages were sought, and the stock agreed to be issued in lieu thereof, and that the stock had been issued, etc.

The bill seeks to have the certificates of stock issued, and this was the contract of the parties. It does not appear that the defendant cannot comply with this contract. Although its name has been changed since the contract was made, it is nevertheless essentially the same corporation that made the contract. The contract is fair and equal. No such changes have taken place in the subject-matter of it to make it inequitable specifically to execute it. Although more than thirty years elapsed from the making of it, its validity was respected and recognized by defendant, and this within some six or seven years of the filing of the bill in this case for its specific performance. All has been done, perhaps, in the way of recognition that was required, except to place the complainants' names as stockholders upon the books of defendant and issue to them certificates of stock.

The exceptions of defendant to the Referees' report will be disallowed, and the report will be confirmed, affirming the chancellor's decree, except as to dividends.