EIDSON v. HARDWARE MUT. CASUALTY CO.

*(Knoxville,* September Term, 1950.)

Opinion filed December 9, 1950.

Phillips & Hale, of Rogersville, for complainants.

C. W. Margraves, of Rogersville, and Hodges & Doughty, of Knoxville, for defendants.

Mr. Justice Gailor delivered the opinion of the Court.

The bill in this cause was filed in the Chancery Court of Hawkins County by the widow of a deceased employee, to recover death benefits on a policy of Workmen's Compensation Insurance from the Insurance Company of the employer. The employer is a partnership, McDonald & Sons Company, which, in a single business, operates a grain mill in Rogersville, and a 1,000-acre farm in the county nearby. The partnership is not made a party to this suit, and no relief is here sought against it.

The husband of the complainant was a farm laborer, who, in the course and within the scope of his employment, was killed in an accident on the public highway while he was riding on top of a load of hay. He was swept from the top of the load by the limb of a tree, and fell, sustaining the injuries from which he died, and for which the present action was instituted on the policy. In accordance with the terms of the policy, the employer reported the claim and the Insurance Company accepted liability and sent its first check for compensation under the Act. Being then advised by counsel, that since the deceased was a farm laborer, his employment was excepted from the Tennessee Workmen's Compensation Act, Code, Section 6856, and that so the Company might avoid liability on the policy, the Company refused to make further payments, and this bill was filed. The Chancellor, under the authority of *Woods* v. *City of LaFollette,* 185 Tenn. 655, 207 S. W. (2d) 572, decreed recovery for the complainant on the policy and the Insurance Company has perfected this appeal.

The policy of insurance which is the basis of this litigation, is substantially identical with that considered by the Court in *Woods* v. *City of LaFollette,* supra, and is a "Standard Workmen's Compensation and Em-

ployer's Liability Policy." Since the applicable provisions of the policy are quoted at length in the Woods case 185 Tenn. at pages 657 through 660, 207 S. W. (2d) at page 573, we find it unnecessary to recopy them here. It is sufficient to say that the Insurance Company defends on the ground that since at the time of his death, the employee was employed as a farm laborer, that the liability of the Company, if any, is not under "(a)" (Woods opinion, 185 Tenn. at page 658), 207 S. W. (2d) at page 573, the Workmen's Compensation Law, but under "(b)" (Woods opinion, 185 Tenn. at page 658), 207 S. W. (2d) at page 573, "To Indemnify this Employer against loss by reason of the liability imposed upon him by law for damages . . . ."

In the Woods case, supra, the Insurance Company unsuccessfully predicated its defense on two grounds: (1) That the deceased employee being a policeman, was an "officer" and not an "employee." *Cornet* v. *City of Chattanooga,* 165 Tenn. 563, 56 S. W. (2d) 742. (2) That the Company was liable, if at all, under the Employer's Liability provisions of the policy, to the employer for damages recovered against it in an action at Common Law. The second defense is identical in all respects with that made by the Company here.

The policy provides that the amount of premiums shall be established and based upon the total amount of wages paid to the employees covered by the policy. In the policy as it was an exhibit to the bill, the categories of employees covered are listed in three groups, and the amount of annual premiums to be paid is estimated on the basis of the estimated total annual remuneration of these employees. The three categories of employees to be covered were:

| Classification of Operations | | Estimated Total Annual Remuneration | Rate per $100 of Remuneration | Estimated Premium |
|---|---|---|---|---|
| Grain milling | 2014 | 8,645 | 1.76 | 152.15 |
| Chauffeurs and their helpers N. O. C. Commercial—including garage employees | 7380 | 2,915 | .87 | 25.36 |
| Farms—N. O. C.—All employees other than inservants—including drivers, chauffeurs & their helpers | 0006 | 1,650 | 1.58 | 26.07 |

There is no indication from this schedule that employees in one of these categories were to be covered in a different manner or under a different part of the policy from the employees in the other categories. So far as the policy discloses the rate base for premiums on employees in all three categories were the same. Since the effect of the testimony was not to alter or contradict any written term of the policy, it was proper for the Chancellor to hear the evidence of the employer of the conversation had with the agent of the Company at the time the policy of insurance was taken out. His testimony in this regard is significant:

"A. I believe we carried compensation insurance on the mill. In other words, we are required to do that. As I remember, we asked the agent if we could include farm hands and he said yes, and I told him to include them.

"Q. Was this policy issued to you subsequent to that conversation? A. Yes, sir.

"Q. I will ask you if this policy as exhibited here shows an estimated premium for farms of $26.07, based on a payroll of $1650, is that true? A. Yes, sir.

"Q. I will ask you, Mr. McDonald, if this premium was changed or if it remained the same according to

an audit of your policy? A. This is an estimate. If it runs over we pay more and if it runs less we pay less.

"Q. Mr. McDonald, I hand you this little slip of paper which is headed 'Report of Audit' on Policy No. 720972, and ask you if that is the report of the audit of your various payrolls and an adjustment of the premiums paid by you? A. Yes, sir.

"Q. Listed on this audit is 'Farm N. O. C.', and I will ask you what the payroll was as actually audited? A. $2,029.00.

"Q. The rate per $100 for insurance was what? A. $1.58.

"Q. Making a total premium of how much? A. $32.06.

"Q. I will ask you further if immediately above the column where 'Earned Premium' is set out, the words 'Workmen's Compensation' are printed thereon? A. Yes, sir."

The "Report of Audit" to which reference is made in the foregoing excerpt from McDonald's testimony was the final and considered calculation of the Insurance Company upon which the final charge for premium was based to the employer. From that document it is clear, that no other form than Workmen's Compensation Insurance was charged for, or paid to the Insurance Company. In that document the kind of policy is described as being "W. C." (Workmen's Compensation), and the total earned premium for the three categories of employees,—Grain Milling, Chauffeurs and their helpers, and Farm N. O. C., is carried under the column headed "Workmen's Compensation." Furthermore, the check and covering letter which were sent by the Insurance Company to the employer, upon receipt of notice of the accidental injury to Eidson, stated that the check was for "Compensation 9/10/49 to 9/16/49."

436

Finally, a representative of the Insurance Company testified as follows:

"Q. Mr. Mattews, when you received notice of this injury to this man Eidson, you immediately issued a check for $7.20 as payment to him. This check was dated September 14, 1949. What were the regulations about how soon you must make payments of premiums due for injuries under workmen's compensation law by the terms of the policy? A. Tennessee law provides that payment of compensation must be made by the 14th day of disability.

"Q. This check was issued September 14, 1949. After making this payment did you have any legal advice as to whether or not you were liable under the Workmen's Compensation law? A. I did.

"Q. By reason of that legal advice, did you stop the further payment? A. I did."

On this record, we think the evidence is conclusive that the agent of the Insurance Company agreed to add the "Farm Employees" to the "Mill Employees" and "Chauffeurs," and to give to all three categories identical coverage; that the Company ratified this agreement of its agent, charged premiums accordingly, and commenced to carry out its contract by paying compensation when it received notice from the employer under terms of the Workmen's Compensation Act. It was only when the Company was advised by counsel that it might escape liability and repudiate its contract that it denied liability on the claim.

The defense of the Company is irreconcilable with the documentary evidence of how the premiums were billed and collected, with the action of the parties, and particularly, with the limitation of coverage of "Farm Em-

ployees" in the original policy where the limitation of coverage is defined as "Farms—N. O. C.—*all employees other than inservants*,—including drivers, chauffeurs and their helpers." If, as counsel for the Company insists, it was intended by this limitation to insure the employer against common law actions by the farm employees, why were "inservants" excepted from the coverage when their rights of action at common law against the employer, were in all respects, equal to the rights of farm employees? The word "inservants" is an unusual one and the only explanation for its use here is, we think, the fact that such servants are coupled with farm operatives in our Workmen's Compensation Act, where at Code Section 6856(c) it is provided that this Chapter shall not apply to "domestic servants and employers thereof; nor to farm or agricultural laborers and employers thereof." The only fair inference is that when the Insurance Company coupled these two categories of employees and specifically agreed to cover farm laborers, but to exclude inservants, that reference was intended to the Workmen's Compensation Act for such coverage, and not to the employers' liability to employees at common law.

The Tennessee Workmen's Compensation Act is an "elective" statute, *Scott* v. *Nashville Bridge Co.,* 143 Tenn. 86, 223 S. W. 844, and classes of employment that are excepted from the provisions of the Act by Code Section 6856, may be brought within its provisions by agreement of the parties. *Louisville & N. R. Co.* v. *Nichols,* 168 Tenn. 672, 80 S. W. (2d) 656, 98 A. L. R. 508. In this connection, the late CHIEF JUSTICE GREEN said: "It appears from cases collected in a Note, 103 A. L. R. 1523, that there is a conflict of authority as to whether one taking out compensation insurance, by that act does not

bring himself within the statute, although otherwise he would not be. We need not go into this question here." *Travelers Ins. Co.* v. *Dudley,* 180 Tenn. 191, 194, 173 S. W. (2d) 142, 143.

While this left the question open, it indicates clearly, that no ground of public policy, or a proper construction of the Workmen's Compensation in Tennessee, prevents excepted classes of employers and employees from coming under the Act by agreement. In every case, the decision depends on a proper construction of a contract. *Cornet* v. *City of Chattanooga,* 165 Tenn. 563, 56 S. W. (2d) 742; *Woods* v. *City of LaFollette,* 185 Tenn. 655, 661, 207 S. W. (2d) 572.

In the present case, both the employer and the employee are insisting that the insurance was under the Workmen's Compensation Act, and since the employer is not a party defendant, it is only the Insurance Company that is resisting that conclusion. We see no valid reason why, when an insurance carrier insures an employer and the policy expressly covers farm employees whose salaries are made the basis of the computation of the premium which is paid to the Insurance Company by the employer for the benefit of the farm employees, that the Insurance Company should not be held to comply with its contract. It is not necessary for us to decide on this record, whether the taking out of insurance by the employer, without the knowledge of the employee, had the effect of placing the employment contract under the Workmen's Compensation Act. It is only necessary to decide that the Insurance Company, having been paid for a certain type of insurance made for the benefit of the employee, shall be held to its contract by the employee under an express term of the policy which gives the em-

ployee the right to sue the Insurance Company directly, without making the employer a party to the litigation.

■■ We find nothing in the policy itself, in the report of audit, in the check drawn in payment of the claim on receipt of notice under the Workmen's Compensation Act, or in the memorandum accompanying the check (which commences with the words, "the enclosed payment is for compensation due the employee . . ."), all of which documents were drawn by the Company and are to be construed against it, which would justify a construction that the contract of insurance was for anything other than Workmen's Compensation Insurance. There is no language in any of the documents which make up the contract between the Insurance Company and the employer, which would justify a construction that any form of insurance other than Workmen's Compensation Insurance was in contemplation of the parties.

"In Tennessee the doctrine is firmly established that the beneficiary, though not a party to the contract, may maintain an action directly in his own name against the promisor, where such promise between the promisor and the promisee is made upon sufficient consideration for the benefit of the third party." *Ruohs* v. *Traders' Fire Insurance Co.,* 111 Tenn. 405, 429, 78 S. W. 85, 91; *Title Guaranty & Trust Co.* v. *Bushnell,* 143 Tenn. 681, 689, 228 S. W. 299, 12 A. L. R. 1512; *Bedford County* v. *Nashville, C. & St. L. Railroad Co.,* 82 Tenn. 525; *McCarty* v. *Blevins,* 13 Tenn. 195, 196; *Moore* v. *Stovall,* 70 Tenn. 543; *O'Conner* v. *O'Conner,* 88 Tenn. 76, 12 S. W. 447, 7 L. R. A. 33; *Thompson* v. *Thompson,* 71 Tenn. 126; *Mills* v. *Mills,* 40 Tenn. 705, 711; *Lookout M. Railroad Co.* v. *Houston,* 85 Tenn. 224.

The assignments of error are overruled, and the Chancellor's decree is in all respects, affirmed.

NEIL, C. J., dissents.

NEIL, Chief Justice.

I cannot agree that the policy of insurance, which is the basis of this suit, was intended to cover farm labor employees. To my mind it is a dual policy, one covering compensation cases (*employees entitled to compensation*) and the other to indemnify the employer against the payment of damages under a suit at common law.

It cannot be seriously doubted but that an insurance company could by appropriate expressions bind itself to pay compensation to an injured employee although he may not, as a matter of law, come within the provisions of our compensation statute, but the intention should be *unmistakable*. The right of recovery in the instant case seems to rest upon inference. No reason is given as to why the employer should bind himself to pay compensation to farm employees when they are expressly excluded under our Workmen's Compensation Law.

No question is made but that William Jesse Eidson was a farm laborer at the time he sustained an injury which caused his death. The policy, the original being filed as an exhibit in the case, provides as to workmen's compensation payments the following: "to pay promptly to any person *entitled thereto under Workmen's Compensation Laws*" as provided therein. (Emphasis supplied.) The Workmen's Compensation Law is by express agreement between the parties made a part of the contract. It further provides, "Nothing herein contained shall operate to so extend this policy as to include within its terms any Workmen's Compensation Law, scheme or

plan not cited in an endorsement hereto attached". The only endorsement on the policy is headed "Tennessee Workmen's Compensation Endorsement". Paragraph 1 provides: "The obligations of Paragraph 1 (a) of the policy to which this endorsement is attached include such Workmen's Compensation Laws as are herein cited and described and none other". There is no scheme or plan whereby farm laborers were to be included and covered by this policy. They are expressly excluded under the terms of our statute. The policy before us covers all employees *other than farm laborers* and obligates the insurance carrier to pay compensation claims as provided in our compensation statute.

The policy, in a large measure, is for the benefit of employees, whereas the indemnity provision of the policy is for the sole benefit of the employer—the policy holder. The company obligates itself, as follows, to defend in the name of the employer any suits which may at any time be instituted against him "although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent". The carrier further obligates itself "to pay all costs taxed against the employer in any legal proceedings etc., including all expenses incurred by the company for investigation, negotiation or defense".

The limit of the insurer under the foregoing is not in excess of $25,000 "as a result of one or more claims arising out of a single accident". The mere fact that there may have been no liability at common law to pay damages in the instant case could not convert the policy from one of indemnity to that of Workmen's compensation liability.

The dependents of the deceased employee are not in a position to plead the doctrine of estoppel. As I understand it, the majority view does not base its conclusions upon any such principle. In *Cornet* v. *City of Chattanooga,* 165 Tenn. 563, 56 S. W. (2d) 742, it was held: "A city which accepted the provisions of the Compensation Act and in its notice of acceptance referred to members of the police force as within the provisions of the Act is not estopped to deny liability on account of the death of a policeman, when it is not shown that such policeman or the petitioner had knowledge of the fact prior to the accident."

While the payment to the widow of $7.20 following the accident might indicate to some extent an admission of liability by the insurance carrier to pay compensation it is not conclusive of the fact as against the express terms of the policy. Moreover, the fact that the agent and servant of the company may have been mistaken as to the claimant's rights under the policy should not prejudice the Court in construing it. For these reasons I must respectfully dissent.