Earl McCALL and Clennie Lee Myers, Jr.,
Appellees,

v.

TOWNE SQUARE, INC., and Bob Smith
Construction Company, Appellants.

Supreme Court of Tennessee.

Dec. 17, 1973.

Harold B. Stone, Anna F. Hinds, Stone & Bozeman, Knoxville, for appellees.

Taylor, Inman & Tilson, Morristown, for Towne Square, Inc.

Milligan, Silvers, Coleman, Fletcher & Gaby, Greeneville, for Bob Smith Construction Co., Inc.

## OPINION

W. M. LEECH, Special Justice.

The original complaint in this cause was filed in the Chancery Court for Greene County by Earl McCall and Clennie Lee Myers, Jr., hereinafter referred to as M&M, as plaintiffs, against Towne Square, Inc., Bob Smith Construction Company, Inc., Robert F. Smith, and Clarence Broyles, Jr., and wife, Jean Estes Broyles. In this opinion the defendants will be referred to by name. The complaint alleges the execution of a series of agreements and contracts which by proper interpretation makes M&M third party beneficiaries and seeks to recover damages for breach of the contract.

The Chancellor sustained M&M's claim as third party beneficiaries and awarded $60,000.00 in damages against Towne Square, Inc., Bob Smith Construction Company, Inc., and the Broyles. The suit was dismissed as to the defendant, Robert R. Smith.

Towne Square, Inc. and Bob Smith Construction Company, Inc. appealed to the Court of Appeals, Eastern Division, where the decree of the Chancery Court was affirmed as to Towne Square, Inc. and reversed and dismissed as to Bob Smith Construction Company, Inc. We granted certiorari on application of M&M.

The facts of the case are substantially as follows: In March of 1964, Towne Square, Inc., the owner of a tract of land in Greeneville, Tennessee, planned to develop said tract into a shopping center. Thus on March 18, 1964, Towne Square, Inc., entered into an agreement with Bob Smith Construction Co., whereby the Construction Company would develop the shopping center according to future plans. However, within the boundaries of the property to be developed, M&M owned three lots. As a result, on April 6, 1964, Towne Square and M&M entered into an agreement whereby M&M would execute deeds to the three lots and deliver them in escrow. Towne Square, as part of the consideration for these lots, agreed to construct a commercial building for M&M on three other lots outside the shopping center in accord with plans which were then tentatively agreed upon. This agreement specifically provided that the deeds to the lots would be placed in escrow and not delivered until Towne Square had constructed M&M's building. The deeds were prepared and delivered in escrow. On May 15, 1965, Towne Square and Bob Smith Construction Co. entered into a contract whereby the Construction Company would build the M&M building for Towne Square on a cost basis plus a fee of $5,000.00, the contract specifically providing:

"The contractor (Bob Smith Construction Company, Inc.) agrees to provide all of the labor and materials and to do all things necessary for the proper construction and completion of the work shown and described by drawings and specifications with respect to a commercial building *to be constructed upon the property of Earl McCall and Clennie Lee Myers, Jr.* situate on Summer Street in the Town of Greeneville, 10th Civil District of Greene County, Tennessee . . .." (Emphasis added).

Attached to this agreement was the following:

### "Guarantee"

"In order to induce contractor to enter into the foregoing Agreement and for the good and valuable considerations, the receipt whereof is hereby acknowledged, the undersigned, A. C. Broyles, Jr., and wife, Jean Estes Broyles, unconditionally guarantee the performance of the covenants and agreements undertaken by the owner, Towne Square, Inc., in said Agreement.

s/ A. C. Broyles, Jr.

s/ Jean Estes Broyles."

Thereafter, Towne Square ran into financial difficulties and approached M&M explaining that it could not acquire adequate financing without a fee simple unencumbered title to the three lots owned by M&M. This also made it necessary for Bob Smith Construction Co. to sign a waiver of lien. Thus, on July 26, 1965, Broyles and wife, and H. J. Lamons, Jr. and wife, entered into an agreement with Bob Smith Construction Co. to guarantee performance of the contracts and agreements mentioned above. In addition, Broyles and wife, the major stockholder in Towne Square, executed a trust deed on a building owned by them individually, known as the Formex Building, the purpose of said deed of trust being as follows:

"(1) To secure and make certain the guarantee of A. C. Broyles, Jr. and wife, Jean Estes Broyles, of certain agreements and covenants undertaken by Towne Square, Inc. with Bob Smith Construction Co. Inc., under date of the 15th day of May, 1965.

"(2) To secure and make certain the guarantee and indemnification agreement executed by A. C. Broyles, Jr. and Jean Estes Broyles and H. J. Lamons, Jr. and Ann W. Lamons, to Bob Smith Construction Co., and Robert F. Smith, et al, under date of July 26, 1965."

When the foregoing instruments were executed, M&M released the deeds from escrow thereby allowing Towne Square to get the financing necessary to go forward with the construction of the shopping center.

The aforementioned Formex Building was valued in excess of $300,000.00 and was encumbered by a first mortgage to secure a long-term loan. Thus, Broyles and wife had pledged an equity exceeding $100,000.00 to protect Bob Smith Construction Co. in the performance of its contract to wit, the construction of the M&M building and the shopping center. Bob Smith Construction began work on the shopping center as the plans and specifications for the M&M building were being finalized, the general plans having previously been agreed upon. Subsequently, Broyles and Towne Square again found themselves in financial difficulty. As a result, in July 1966, Broyles negotiated a sale of the Formex Building· to a Nashville group for $325,000.00. Broyles went to Bob Smith in an attempt to obtain a release of the July 21, 1965 trust deed. During the discussion, Smith expressed a desire to purchase the Formex Building, and after negotiations the Formex Building was conveyed to Bob Smith and a Dr. Kilday on July 15, 1966. On the same day, Bob Smith Construction Co. released the trust deed that had been given to guarantee performance of the May 15, 1965 contract between Towne Square and Bob Smith Construction. Smith and Kilday paid to Broyles and wife the sum of $60,000.00 and paid the balance into an escrow account for Bob Smith Construction Co. to cover the cost of developing the shopping center. In addition, the contract providing for the construction of the M&M building was cancelled and Bob Smith Construction Co. proceeded with the development of the center. During the July 1966 negotiations between Broyles, Town Square, Inc., Bob Smith Construction Co. and Bob Smith, M&M were not consulted. The record is not clear when M&M learned of the aforementioned transactions, but after learning of them, this action seeking damages in the amount of $100,000 was filed.

■ Under these facts it is necessary to consider all of the instruments in the sequence of execution to arrive at the intentions of all of the parties, and this leads us to the conclusion that no one of the instruments can be considered independently, and all must be considered collectively. When this is done, it is apparent that there was in reality one total contract designed to insure the development of the shopping center and the construction of the commercial building for M&M. The deed of trust on the Formex Building by its terms was not just to guarantee Bob Smith Construction

Company in the payment of funds due it in the development of the center but was also to guarantee the completion of the building for M&M. Moreover, the record shows that there was sufficient equity in the Formex Building to protect the Construction Company in building both the shopping center and M&M's commercial building. Therefore, since this trust deed along with the contract of May 15th made M&M a third party beneficiary, neither the Construction Company nor M&M could release the rights of the other. Not only did Bob Smith have constructive notice of this secured right of M&M when he and Dr. Kilday paid $60,000.00 to Broyles and wife, the parties who had guaranteed the performance of the total contract, he had actual notice.

The question of construing separate instruments together to establish the total contract is discussed at length in 17 Am. Jur.2d, Contracts, and especially, in §§ 263–65, wherein the general principles applicable to the facts in the case sub judice are discussed. Simply stated these principles are that:

"Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by reference as a part of the contract and therefore, may be properly considered in the construction of the contract. Where a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties."

\* \* \* \* \* \*

"Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect as between the parties themselves *and all persons charged with notice so that the intent of the parties may be carried out and the whole*

*agreement actually made may be effectuated."*

\* \* \* \* \* \*

"It is generally held that a contract and a bond given to secure its performance must, where construction of the contract is called for, be construed together. Such a bond is sometimes regarded as a part of the contract. At any rate, uncertainty in the contract may be clarified or explained by resorting to the bond." (Emphasis added).

17 Am.Jur.2d, Contracts, §§ 263–65.

By the terms of the contract between Towne Square, Inc., and M&M, Towne Square promised to build the commercial building for M&M and by the terms of the contract between Towne Square and Bob Smith Construction Co., the Construction Company agreed to perform the duties of Towne Square to M &M. Therefore, we hold that the total contract in this case consisted of the agreement between Towne Square and M&M, the terms of which were met by M&M when the three lots were conveyed to Towne Square; the contract between Towne Square and Bob Smith Construction Company; and the deed of trust on the Formex Building. M&M was a third party beneficiary to the overall contract between Towne Square and Bob Smith Construction Co., and by the conveyance of its lots relying upon the promise of the Construction Company to build the commercial building, and the security of the Formex Building, had accepted terms, thus putting it beyond the power and authority of the Construction Co. to cancel the contract and release the security.

The Court of Appeals made the following statement in its opinion:

"In the May 15, 1965 contract, Towne Square, Inc. is the promisor with the Bob Smith Construction Company, Inc., the promisee. Nowhere in the contract is it to be found that the promisee has any duty or obligation to Myers and

McCall, the alleged third party beneficiary. All of the promises contained in the contract enuring to the benefit of Myers and McCall rests upon Towne Square, Inc. The promises and obligations of Bob Smith Construction Company, Inc. contained in the contract are to Towne Square, Inc."

With this statement we do not agree.

In Title Guaranty & Trust Co. v. Bushnell, 143 Tenn. 681, 692, 228 S.W. 699, 702 (1920), this Court said:

"The cases relied upon by the defendants seem to ignore the well established rule of law that when one makes a promise to another for the benefit of a third person, such third person can maintain an action on the promise even though the consideration does not run directly for him."

In the instant case, Bob Smith Construction Co. made a promise to Towne Square, Inc. to fulfill Towne Square's obligation to M&M, which was an essential part of the overall contract for the development of the shopping center. Therefore, Bob Smith Construction Co. was the promisor to Towne Square, Inc., the promisee, for the benefit of M&M who had previously conveyed the lots to Towne Square making M&M a creditor beneficiary.

We think the Court of Appeals misconstrued Willard v. Claborn, 220 Tenn. 501, 419 S.W.2d 168 (1967), wherein the Court quoted from Eidson v. Hardware Mutual, 191 Tenn. 430, 234 S.W.2d 836 (1950), defining the three classes of third party beneficiaries. We quote:

" 'In Tennessee the doctrine is firmly established that the beneficiary, though not a party to the contract, may maintain an action directly in his own name against the promisor, where such promise between the promisor and the promisee is made upon sufficient consideration for the benefit of the third party.' (citing cases).

"In Eidson v. Hdw. Mutual, supra and the cases cited therein the terms of the contract itself or the circumstances surrounding its execution clearly indicate the contract was intended to operate for the benefit of some third person. In the case at bar there is nothing in this contract of insurance or in the circumstances surrounding its execution to indicate it is intended to operate for the benefit of plaintiffs.

"In contracts there are essentially three types of third party beneficiaries. First, where the performance of the promise will constitute a gift to the beneficiary; the beneficiary is a donee beneficiary. *Second, if no purpose to make a gift appears from the terms of the contract and the performance of it will satisfy an actual or supposed asserted duty of the promisee to the beneficiary; the beneficiary is a creditor beneficiary.* Third, in all other cases the beneficiary is deemed to be an incidental beneficiary." (Emphasis added).

In the instant case, M&M falls in the second of the three aforementioned classes. This necessarily follows because Towne Square was clearly under a duty to construct the commercial building for M&M, and Bob Smith Construction Co. promised to perform that duty.

The action of the Court of Appeals in reversing the Chancellor as to Bob Smith Construction Company, Inc. is reversed, the Chancellor's decree is in all respects affirmed and the cause is remanded to the Chancery Court for Greene County, Tennessee, for the enforcement of the decree of that court.

DYER, C. J., McCANLESS and FONES, JJ., and JENKINS, Special Justice, concur.