**AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Appellant,**

v.

**Gene BRADSHAW, Appellee.**

Supreme Court of Tennessee.

July 10, 1978.

N. R. Coleman, Jr., Milligan, Coleman, Fletcher & Gaby, Greeneville, for appellant.

John C. Porter, Newport, for appellee.

## OPINION

FONES, Justice.

The single issue in this case involves the determination of plaintiff Gene Bradshaw's, average weekly wage for the purpose of workmen's compensation benefits.

Pursuant to contract, Bradshaw, whose operations would not have been covered by the Workmen's Compensation Act by operation of law, was required to pay for workmen's compensation coverage obtained by Champion International Corporation, Timberlands Division, through defendant American Mutual Liability Insurance Company. Champion withheld 26.9 cents per ton from the price of pulpwood to pay the workmen's compensation and public liability insurance premium under the first contract with Bradshaw and 38.6 cents per ton under the second contract.

Over the period covered by two contracts between Bradshaw and Champion, Champion paid Bradshaw $7,765.85 for 1,031 tons of pulpwood. In this Court, defendant concedes that the correct number of weeks of operation that produced the gross tonnage and earnings of Bradshaw was twenty-one.

Bradshaw contends that his average weekly wage should be computed on the gross earnings of $7,765.85 for twenty-one weeks of work, resulting in an average weekly wage in excess of the maximum workmen's compensation benefit of $85 per week.

Defendant, American Mutual Liability Insurance Company, insists that the gross earnings paid Bradshaw by Champion should be reduced by labor costs, truck and equipment expense, equipment depreciation and stumpage costs paid the U. S. Forestry Service. All of these deductions were estimated because neither Bradshaw nor Champion had any records that reflected any of Bradshaw's expenses. In the trial court, defendant's computation of Bradshaw's alleged expenses resulted in an average weekly wage of $24.60, and defendant had tendered that amount in payment of temporary total disability benefits, which tender was refused by plaintiff. The "suggested computation" in defendant's brief in this Court would produce an average weekly wage of $35.30.

The trial judge found that plaintiff had sustained a permanent partial disability of fifty-five percent and that he was entitled to the maximum compensation rate of $85 per week. The trial judge found that the premium rates paid by plaintiff were determined on the basis of Bradshaw's gross earnings and he observed that the statute, T.C.A. § 50–902(c), does not distinguish between net and gross earnings and that the statute ought to be liberally construed in favor of the employee. T.C.A. § 50–918.

On January 28, 1976, Bradshaw, as seller, entered into a written contract with Champion International Corporation, as buyer, to harvest and deliver pulpwood to buyer at Del Rio, Tennessee. The contract covered a six month period calling for Bradshaw to deliver ninety tons of pulpwood every two

weeks. Champion agreed to pay Bradshaw the following sums per ton for four categories of pulpwood: pine shortwood—$8.588; hardwood shortwood—$7.586; pine longwood—$7.85; hardwood longwood—$6.89. The contract provisions relevant to this case were these: (1) the seller Bradshaw was an independent contractor; (2) Bradshaw would be required to pay for insuring his own operations to the extent demanded by Champion; (3) Champion was authorized to deduct 26.9 cents per ton on a monthly basis for workmen's compensation and public liability insurance to be written by American Mutual Liability Insurance Company.

A second contract was entered into in June, 1976, calling for Bradshaw to provide 1,000 tons of pulpwood by December 1, 1976, and increasing the price per ton in each of the four categories approximately thirty-five cents. The sum to be deducted from the price paid Bradshaw for workmen's compensation and public liability premiums was also increased by 11.7 cents per ton.

■ Parties who would not be within the coverage of the workmen's compensation law may bring themselves within its provisions by contract. *Eidson v. Hardware Mutual Casualty Company,* 191 Tenn. 430, 234 S.W.2d 836 (1950); *Woods v. City of La Follette,* 185 Tenn. 655, 207 S.W.2d 572 (1947).

The provisions of T.C.A. § 50–902(c) defining "average weekly wage" provide several methods of determining an employee's earnings when he has worked less than fifty-two weeks, none of which is applicable here. The act is silent with respect to any deductions from gross earnings and it is clear that the statute contemplates employees who earn a wage or salary for labor or services from which no deductions are appropriate in determining the average weekly wage. The act simply does not envision that an "employee's" earnings would be computed on the basis of business profits or losses using standard accounting methods, as urged upon us by defendant.

No authority has been cited by the parties that we find analogous or persuasive, nor have we found any as a result of considerable independent research.

■ The record leaves no doubt that Bradshaw's operations would not have been within the coverage of the workmen's compensation act and that Champion required him to elect to accept the provisions of the law and pay the cost of insuring that liability. The trial judge found as a fact that the premiums paid by Bradshaw through Champion were predicated on the amount Champion paid Bradshaw per ton for pulpwood cut and delivered. There is material evidence to support that finding. It is significant that when the price per ton of pulpwood was increased in the second contract, the workmen's compensation premium was also increased. It is also clear that neither Champion nor defendant insurance company had any information about Bradshaw's expenses until after his claim for workmen's compensation was made, when defendant sought to ascertain his expenses by taking his discovery deposition. If the parties had intended that Bradshaw's earnings for workmen's compensation purposes be reduced by expenses incurred in cutting and delivering the pulpwood then it was incumbent upon Champion to expressly provide therefor in the contract.

The testimony is not clear, but supports the inference, that Bradshaw had no regular employees; that his father, his brother and one Lawrence Parton helped him cut wood from time-to-time. Defendant seeks to interpret Bradshaw's testimony as requiring a finding that employees of Bradshaw did all of the wood cutting and Bradshaw only did the hauling. This contention is obviously made to justify deduction $10 per cord for labor, a total of $3,750.10, according to defendant's estimate. But Bradshaw testified that he cut wood himself and that he never had more than two men helping him. The fact that he sustained the injury that is the subject of this suit while cutting wood supports his testimony to some extent.

He also testified, uncontradicted, that one man could cut five cords of wood per day

and that labor costs for cutting wood were usually figured at approximately $10 per cord. Based upon those uncontradicted figures, a worker employed in the work Bradshaw was doing when injured would earn $50 per day, with an average weekly wage for workmen's compensation benefits well in excess of the $85 maximum. We think this record would justify treating Bradshaw's earnings as equivalent, for workmen's compensation purposes, to a workman engaged in cutting and hauling wood in that area. "Where . . . it is impracticable to compute the average weekly wages as above defined, regard shall be had to the average weekly amount . . . being earned . . . by a person in the same grade employed in the same class of employment in the same district." T.C.A. § 50–902(c).

The decree of the Circuit Court of Cocke County is affirmed and the cause is remanded to that court for the enforcement of the decree. Costs are adjudged against defendant, American Mutual Liability Insurance Company.

HENRY, C. J., BROCK and HARBISON, JJ., and OLIVER, Special Justice, concur.