IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 7, 2004 Session

## AUSTA LA VISTA, LLC and TAKE IT EASY, LLC, and BOARDWALK PROPERTY OWNERS ASSOCIATION, v. MARINER'S POINTE INTERVAL OWNERS ASSOCIATION, INC., and HENRY PHILLIPS, individually

**Direct Appeal from the Chancery Court for Cumberland County**
**No. 8339-899     Hon. Vernon Neal, Chancellor**

_____

**No. E2004-00184-COA-R3-CV  - FILED MARCH 17, 2005**

_____

In this dispute, plaintiffs sought declaratory judgment as to use of their lake by defendant, payment of fees and injunctive relief. Defendant counter-claimed for a declaratory judgment as to its use of the lake, disputed any obligation to pay fees to the plaintiff, and sought monetary damages and attorney's fees. The Trial Court held that plaintiffs' owned the lake and the master deed provided for maintenance fee and membership fees, that defendant's members were required to pay. But if the defendants' members did not use the lake they would not be required to pay the fees. On appeal, we hold the Court correctly found that the lake was an amenity and that a lake use fee was required to be paid to plaintiffs pursuant to the master deed and exhibits. But the Court erred in holding that defendant owners could choose not to use the lake and not pay the fees. We otherwise affirm the Court's rulings on the issues raised on appeal.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which SHARON G. LEE, J., and WILLIAM H. INMAN, Sp. J., joined.

Gary R. Patrick, Chattanooga, Tennessee, for appellant.

M. Taylor Harris, Nashville, Tennessee, for appellee, Mariner's Pointe Interval Owners Association, Inc.

**OPINION**

Plaintiffs' action against Mariner's Pointe Interval Owners Association, Inc., (MPIOA) asked injunctive relief, quiet title, declaratory judgment, and payment of fees. Plaintiffs alleged that they owned Lake Holiday, which bordered a 25 acre tract of property owned by MPIOA, as well as several hundred adjoining acres of property. They claim that their predecessor in title, Boardwalk, had owned plaintiffs' and defendant's properties, and a registered document titled "Declaration of Horizontal Property Regime and Master Deed" ("master deed") on March 31, 1981, allowed the sale of time-share interests in property now owned by defendant. Amendments to this document were filed over the ensuing years by Boardwalk and its successor, Lake Properties, Inc.

The Complaint alleged that MPIOA bought the 25 acre tract known as Mariner's Pointe after it was seized by the IRS in 1993, and that MPIOA then filed a document which purported to be an amendment to the above-referenced document, which significantly changed relevant portions of the document, namely the right of Boardwalk or its successors to control the lake or receive fees from same. Plaintiffs averred that MPIOA was selling weekly time-shares on its property, but telling purchasers that they had the right to use the lake year round, and a declaratory judgment was sought to the effect that MPIOA had no right to use the lake, or if they did have a right to its use, it was only for those weeks which had been purchased as a time-share interest, and only after paying the appropriate fee.

Plaintiffs also sought an injunction preventing people from using the lake who had no right, sought clear title to the lake, and asked for damages for non-payment of fees for the use of the lake.

MPIOA Answered and filed a Counterclaim for Declaratory Judgments, Injunctions and Damages. It admitted that it was a "not-for-profit condominium association whose approximately 2,000 members own an equal share of Mariner's Pointe Resort, consisting of 25.25 improved acres, an appurtenant easement for nonexclusive use of Lake Holiday, and buildings and other improvements extending into Lake Holiday which have been used continuously by Defendant since 1981." Defendant averred that plaintiffs have no right to claim control of Lake Holiday, because the lake is an impoundment of the Obed River, is regulated by the Tennessee Wildlife Resources Agency ("TWRA") and the City of Crossville, and Crossville has the right to take water from Lake Holiday by use of the dam. Defendant also asserted that the original Declaration of Horizontal Property Regime and Master Deed gave the condominium property owners "easements and rights appurtenant thereto" including the use of recreational amenities, such as the lake.

Defendant also averred that the marina building extended from defendant's property into and over the lake, and was shown as an improvement to defendant's tax parcel in the tax assessor's office. It claimed that in addition there was a fishing pier, boat ramp, beach area, lakeside boardwalk, and boat slips, which it owned and which were attached to its land/buildings, and for which it maintained, operated, and paid utilities, taxes and insurance. Defendant claimed that it was

a successor in interest to Boardwalk, and that it owned all "easements and rights appurtenant thereto, intended for use in connection with the Condominium", which gave it the right to use the lake and to collect fees for the use from its members.

Defendant also raised the affirmative defense of estoppel, claiming its members had relied on representations made by plaintiffs' predecessor, Lake Properties, Inc., wherein they were told that they had perpetual rights to use the lake and related recreational facilities. That plaintiffs had allowed defendant's members to use the lake for 3 ½ years after plaintiffs' purchased the property. It also raised the defense of res judicata based on a prior lawsuit between defendant and Lake Properties, Inc., and its Chapter 11 bankruptcy, as well as laches, unclean hands, and statutes of limitation.

Defendant asked the Court to declare that its members could use the lake, that its members did not have to pay fees to plaintiffs, and that plaintiffs be enjoined from trespassing on defendant's property, and for monetary damages and attorneys fees. Ultimately, the Court conducted an evidentiary hearing in August of 2003. Following the hearing, the Court took the matter under advisement and delivered a bench ruling on November 21, 2003. The Court held that the lake was clearly an amenity, and that MPIOA admitted as much in its Answer. The Court found there was no dispute that Austa owned the lake, and that the master deed provided for a maintenance fee and a membership fee, and that the membership fee was for the use of amenities owned by Boardwalk. Further, the Court said the master deed stated that failure to pay a fee would preclude the owner from using the amenities, and that the public offering filed the same date as the master deed also said the membership fee was for the use of Boardwalk-owned amenities, and that the Purchaser/Seller Verification listed the lake as an amenity. The Court found that MPIOA relied on these documents in its Answer, and was judicially estopped from taking a contrary position. The Court also held that the master deed provided that all provisions were covenants running with the land and all unit owners and their assigns were bound by these covenants.

The Court said that while Boardwalk owned the development, all fees went to Boardwalk, and that LPI collected fees from interval owners in the form of a single maintenance fee. The Court found that after MPIOA sought to amend the master deed, it then asked the bankruptcy court to rule that res judicata would bar the plaintiffs' claims, but the bankruptcy court refused. The Court noted that Austa did not own the property when MPIOA went into bankruptcy, and Mary Lou Wibel, principal owner and manager of Austa, testified that she never knew that MPIOA had tried to amend the master deed. The Court found that no one gave MPIOA consent to amend the master deed.

The Court found that LPI sold to Austa in 1995, and that Austa then sought to charge interval owners a fee for the use of Austa's amenities, and that other property owners paid such fees. The Court found that MPIOA charged a maintenance fee to the interval owners, and one owner testified that she thought the lake use fee was included. The Court found that MPIOA took those fees and used them to pay expenses for its property, and paid nothing to Austa, and that if the interval owners wished to use Austa's lake, they had to pay a fee of $3.00 for their week, or $156.00 if they

wanted to use it for the whole year. But if the interval owner did not wish to use the lake, they did not have to pay a fee.

The Court held that Austa or its successors could not raise these fees until they demonstrated that the cost of maintaining the lake exceeded the fees collected, and that res judicata did not arise from the previous State court proceedings. Also there had been no waiver by Austa to collect such fees. The Court found no laches or abandonment, and that Austa had the right to make reasonable rules with respect to the use of the lake, but could not prohibit paddle boats. The Court found that MPIOA had the right to make reasonable rules for the water within 300 feet of its dock/marina.

Plaintiffs and defendant have appealed, and these issues are presented for review:

1.      Whether the trial court erred in determining that MPIOA has the right to make reasonable rules and regulations of the area of lake within three hundred feet of its marina, dock and shoreline?

2.      Whether the trial court erred in determining that an interval owner is not limited to the week of interval ownership in using the lake?

3.      Whether the trial court erred in determining that neither Austa nor its successors could increase the fee charged for use of the lake until its was shown that the expenses of stocking and maintaining the lake exceeded the fees collected from all sources for its use?

4.      Whether the trial court erred in determining that no fee was required if the interval owner did not wish to use the lake?

5.      Whether the trial court erred in finding that the 1981 Master Deed contains a restrictive covenant requiring timeshare owners to pay a fee to use the lake?

6.      Whether the trial court erred in holding that MPIOA could not amend the Master Deed without approval of Austa?

7.      Whether plaintiffs' claims are barred by waiver, estoppel and/or unclean hands?

The right to use the lake and fees related to its use, are essentially controlled by the documents which were introduced as exhibits at trial, i.e., the master deed and its related exhibits and amendments. The Trial Court found that the lake was clearly intended to be an amenity pursuant to the master deed and its related documents, and was also intended for use by the interval owners, subject to the payment of any required fees. MPIOA argues that the transfer of Mariner's Pointe property carries with it an inherent right to use the lake, because the Mariner's Pointe property

-4-

adjoins the lake, and defendant relies upon the case of *The Pointe, LLC v. Lake Management Ass'n., Inc.,* 50 S.W.3d 471 (Tenn. Ct. App. 2000). *Pointe* dealt with the sale of lake front property to a developer, wherein the deed stated that the land was conveyed together with "all of the appurtenances and hereditaments thereunto belonging." The *Pointe* Court held that this language granted the developer the right to use and enjoy the lake, because riparian rights were an appurtenance to the property, and the Court said that "the conveyance of upland by the owner of both the upland and the adjacent water transfers the riparian rights absent an express provision to the contrary." *Id.* at 477.

The Trial Court distinguished *Pointe*, and we agree. The master deed in this case provides for a timeshare transfer, which would not be selling the land and all appurtenances, but selling the right to occupy a condominium unit for a certain week of the year. Moreover, the master deed and exhibits restrict use of the lake by providing that it, like other amenities, can be used only if the interval owner pays any applicable fees. These fees are described in the master deed as well as the public offering statement. Thus, it is clear from the documents that the timeshare owners were intended to use the lake, but it is also clear that this right carries with it the burden of paying the appropriate fees.

While MPIOA points out, that restrictive covenants "will be enforced according to the clearly expressed intention of the parties; but being in derogation of the right of unrestricted use of property will be strictly construed, and will not be extended by implication to anything not clearly and expressly prohibited by their plain terms", (*see Beacon Hills Homeowners Ass'n, Inc. v. Palmer Properties, Inc.*, 911 S.W.2d 736 (Tenn. Ct. App. 1995)), the documents in this case contain plain terms which expressly limit use of the lake to those owners who pay the appropriate fee. While defendant argues that the master deed itself does not mention the lake, all of the related documents must be construed together to determine the intent of the parties. *See McCall v. Towne Square, Inc.*, 503 S.W.2d 180 (Tenn. 1973). Considering all of the related documents, it is clear that the interval owners were intended to have use of the lake upon payment of the appropriate fee to the owner of the lake, which is now Austa. The Trial Court was correct in holding that a lake use fee must be paid to Austa by the interval owners.

Thus, the issue becomes whether the Trial Court correctly held that an interval owner who did not wish to use the lake did not have to pay the fee. The Trial Court stated no basis for this holding, and as we stated, the documents are clear that a fee was required for the use of any and all of the amenities, and there is no basis to make a distinction between the lake and other facilities, nor is there any provision in the documents for allowing an interval owner to escape paying an amenity fee because they choose not to use one or all of the facilities. The documents set forth that fees will be due, and any purchaser would have been aware of those fees from the documents that were contained in the public offering and purchaser/seller verification, which the witnesses testified were given to every purchaser. Accordingly, we reverse the Trial Court's holding on this issue.

Next, Austa argues that the Trial Court erred in determining that an interval owner was not limited to his/her week of ownership when using the lake. Austa argues that the master deed

states in Article XXIV that owners can only use the common elements during their ownership week, but the master deed also defines common elements as "the portions of the Condominium property not included in the Units". By its terms, it does not apply to the lake, which is not a part of the condominium property. Austa next argues that Article XXIII of the master deed states that no owner shall occupy his unit or exercise any other rights during any other weeks unless expressly authorized to do so. This provision is embedded in the section dealing with "Termination", which is prefaced by "If all Unit Owners and holders of all liens and mortgages affecting any of the Condominium Parcels execute and duly record an instrument terminating the Condominium property". Such termination has not taken place. Reliance on this provision by Austa is misplaced.

Finally, Austa argues that Exhibit 4 to the master deed, which is titled "Management Agreement", states in paragraph 28 that use of recreational facilities is limited to the owner during the ownership week. However, this paragraph then provides that Boardwalk "shall have the right to grant use of the facilities to such other persons and under such terms and conditions as it shall determine advisable in its sole discretion pursuant to the provisions of the Declaration" (master deed). The evidence at trial showed that Boardwalk's successor, LPI, granted use of the recreational facilities year-round to local residents, in exchange for their purchase of off-season timeshare weeks. Substantial testimony at trial established that the purchasers were promised year-round use of the lake and other amenities.

Since year-round use of the recreational facilities, including the lake, was granted to the interval owners by Austa's predecessor, as it was so empowered by the documents, the Trial Court properly found that interval owners could use the lake all year upon payment of the appropriate weekly fee. We find this issue to be without merit.

As to the amount of the weekly fee, Austa argues that it was improper for the Court to require a showing that the expenses of stocking and maintaining the lake exceed the fees collected before the use fee can be increased, because this requirement does not appear in the master deed and related documents. Our review of the documents supports this contention, as they do not appear to place a limit upon the fee that can be collected. As this Court has previously recognized, however:

> Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. App.1986) (citing Restatement (Second) of Contracts § 205 (1979); 17 Am. Jur. 2d Contracts § 256 (1964)); see also 17A C.J.S. Contracts § 328 (1963). Section 256 of American Jurisprudence, Second Edition, on Contracts, further provides:
>
>> [T]here is an implied undertaking in every contract on the part of each party that he will not intentionally or purposely do anything ... which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Ordinarily if one exacts a promise from another to perform an act, the law implies a counter promise against arbitrary or unreasonable conduct on the part of the promissee. However, essential terms of a contract

on which the minds of the parties have not met cannot be supplied by the implication of good faith and fair dealing. (footnotes omitted).

*Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995).

We hold that the Trial Court properly imposed a reasonableness requirement on the lake use fee that can be levied by Austa. The Chancellor did not require that Austa had to bring the matter before the Court before the fee could be increased, however, he simply said that Austa could not raise the fee until it could demonstrate that such was necessary.

Austa argues the Trial Court erred in holding that defendant could make reasonable rules and regulations for that area of the lake within 300 feet of its dock, shoreline, and marina. The evidence before the Trial Court was that the lake use rules proposed by Austa would likely cause damage to defendant's marina and other structures, and any vessels located in the area. The Trial Court also had before it boating rules promulgated by the TWRA, which state that all boats being operated within 300 feet of a commercial dock or marina shall be operated at a slow, no-wake speed, which was not provided for by Austa's proposed rules. The Trial Court's ruling simply recognizes that the 300 foot restriction imposed by TWRA and seeks to protect defendant's property interests. This is an equitable ruling, and we affirm the Chancellor.

Defendant argues that it should have been allowed to amend the master deed without Austa's approval, because it is a successor to Boardwalk as "Boardwalk" is defined in the master deed. Both defendant and Austa are successors to Boardwalk in different pieces of property, which was originally part of a larger development until the tax sale. Defendant argues that Austa is not a successor to Boardwalk as to the Mariner's Pointe property, and thus Austa does not have to give approval. The master deed, however, recognizes that Boardwalk owned not only the timeshare property, but the surrounding development as well, and expressly set forth the manner in which amendments could be adopted by timeshare owners, and specifically provided that "No amendment shall change the rights and privileges of Boardwalk without its written approval." In this context, Boardwalk intended that certain changes could be adopted by the voting owners so long as those changes did not affect its rights. Defendant is a successor to Boardwalk as to the timeshare property, and Austa is a successor to Boardwalk as to the rest of the property, including the lake. Thus, the interval owners cannot, as the Trial Court found, adopt changes which modify or destroy rights belonging to Austa as successor to the remainder of the Boardwalk property. We affirm the Trial Court's ruling on this issue.

Finally, defendant argues that Austa's claims should be barred by the doctrines of waiver, estoppel, and/or unclean hands. It argues that the lake use fees were waived by LPI for failing to charge the same, but this is not established by the proof, as the testimony was that the lake use fees were included in the maintenance fee by LPI. Defendant argues that a further waiver occurred when LPI failed to counterclaim for lake use fees in the 1993 lawsuit between LPI and defendant. This was, however, prior to the amendments which purported to delete the requirement that such fees be paid, which were not adopted until 1995, after LPI no longer owned the property.

It does not appear that LPI has ever claimed that it was owed lake use fees that were not paid. The dispute arose after Austa bought the property and lake and sought to charge lake use fees to defendant's members. It was established that when defendant failed to cooperate with Austa in collecting those fees, this lawsuit was filed.[1]

Defendant also argues that Austa's claims are barred by the unclean hands of LPI in that LPI collected property taxes and such from MPIOA members but did not submit those funds to the proper taxing authority. As we have noted, this is also conduct of LPI and not Austa, and Austa is not responsible for that behavior and cannot be held accountable for its predecessor's actions over which it had no control.

For the foregoing reasons, we affirm the Judgment of the Trial Court in part and reverse in part and remand, and assess one-half of the cost of the appeal to appellants, Austa La Vista, LLC and Take it Easy, LLC, and one-half of the cost of appeal to Mariner's Pointe Interval Owners Association, Inc., and Henry Phillips, individually.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[1] MPIOA argues that Austa waited too long to file suit and should be barred, but Ms. Wibel did testify that she had been trying to get a list of MPIOA members' names from Dave Burgess so that she could send them bills, and was unable to obtain same. As the trial court found, waiver is the voluntary relinquishment of a known right, and there was no proof of such relinquishment in this case.