IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 22, 2020 Session

## ALYSIA REESE MCCRACKEN HANCOCK v. BJR ENTERPRISES, LLC, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 3-416-18        Deborah C. Stevens, Judge**

_____

### No. E2019-01158-COA-R3-CV

_____


This is a healthcare liability action. In her medical authorizations, the plaintiff left blank lines as to who was authorized to receive the patient's records from the medical providers and others receiving notice. The defendants claimed that the authorizations were not HIPAA[1]-compliant, as required by Tennessee Code Annotated section 29-26-121(a)(2)(E). The plaintiff responded that by construing the pre-suit notice packet materials as one cohesive document, all of the elements required by the statute are present and that the defendants had at their disposal all of the information necessary to obtain the patient's medical records. The plaintiff further asserted that the failure of the defendants to attempt to obtain the records precludes any demonstration of prejudice to them. The trial court determined that the plaintiff's statutory notice failed to substantially comply with the requirements of Tennessee Code Annotated section 29-26-121. The plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, J., joined. D. MICHAEL SWINEY, C.J., filed a separate concurring opinion.


M. Chad Trammell, Texarkana, Arkansas, Daniel Clayton, Nashville, Tennessee, and Deborah Truby Riordan, Little Rock Arkansas, for the appellant, Alysia Reese McCracken Hancock.

---

[1]HIPAA refers to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936.

Stephen C. Daves and Gina S. Vogel, Knoxville, Tennessee, for the appellee, BJR Enterprises, LLC, d/b/a Home Helpers of Knoxville.

Mark A. Castleberry and T. Mitchell Panter, Knoxville, Tennessee, for the appellee, Grubb & Associates, Inc., d/b/a Brightstar of Knoxville.

## OPINION

## I. BACKGROUND

This healthcare liability action concerns the medical care received by Ronald Martin Reese ("Patient"). Alysia Reese McCracken Hancock ("POA")[2] holds the power of attorney of Patient and brought this action on his behalf. Patient received in-home care provided by BJR Enterprises, LLC d/b/a Home Helpers of Knoxville ("Home Helpers") and Grubb & Associates, Inc. d/b/a Brightstar of Knoxville ("Brightstar") (collectively, "Defendants") from at least June 1, 2017, until August 4, 2017, at which time he suffered a decline in his skin integrity, resulting in pressure sores, infections, and severe sepsis. POA alleges that Patient's condition is due to Defendants' negligence.

POA commenced this action by filing a complaint on November 27, 2018. On January 10, 2019, Brightstar served POA with a motion to dismiss asserting that the medical authorizations included in POA's pre-suit notice letter to Defendants on July 30, 2018, were not HIPAA-compliant as required by Tennessee Code Annotated section 29-26-121(a)(2)(E). On February 7, 2019, Home Helpers filed an identical motion. POA responded to Defendants' motions collectively, asserting that the notice packet provided to Defendants was substantially compliant with Tennessee Code Annotated section 29-26-121.

A hearing was held on Defendants' motions on May 17, 2019. The trial court determined that it would follow the precedent set forth in *Wenzler v. Xiao Yu*, W2018-00369-COA-R3-CV, 2018 WL 6077847 (Tenn. Ct. App. Nov. 20, 2018); *Riley v. Methodist Healthcare Memphis Hosps.*, 731 Fed. Appx. 481 (6th Cir. 2018), *reh'g denied* (May 29, 2018); and *Bray v. Khuri*, 523 S.W.3d 619 (Tenn. 2017). On June 10, 2019, the trial court entered its order granting Defendants' motions to dismiss upon finding that the HIPAA authorization did not substantially comply with the statutory requirements, that the notice letter could not cure any deficiency on the authorization document, and that POA's failure to substantially comply with the statutory requirements prejudiced Defendants' ability to obtain Patient's medical records. POA timely filed a notice of appeal on July 1, 2019.

---

[2]She is Patient's adult daughter.

## II. ISSUES

We restate the issues raised by POA as follows:

> 1. Whether the trial court erred in holding that POA's method of permitting Defendants access to Patient's medical records failed to substantially comply with the requirements of Tennessee Code Annotated section 29-26-121?
>
> 2. Whether the trial court erred in finding that Defendants were prejudiced when POA provided to Defendants all of the information necessary to obtain Patient's medical records, but they did not attempt to obtain them?

## III. STANDARD OF REVIEW

In this action, Defendants properly filed a motion to dismiss. *Myers v. AMISUB (SFH) Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). The trial court's grant of the motion to dismiss is subject to a de novo review with no presumption of correctness because we are reviewing the trial court's legal conclusion. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Our Supreme Court has provided as follows regarding healthcare liability actions:

> The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 and Tennessee Code Annotated section 29-26-122 is to file a Tennessee Rule of [Civil] Procedure 12.02 motion to dismiss. In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance. If the defendant prevails and the

complaint is dismissed, the plaintiff is entitled to an appeal as of right under Tennessee Rule of Appellate Procedure 3 using the standards of review in Tennessee Rule of Appellate Procedure 13. If the plaintiff prevails, the defendant may pursue an interlocutory appeal under either Tennessee Rule of Appellate Procedure 9 or 10 using the same standards.

*Myers*, 382 S.W.3d at 307.

"When interpreting a statute, our role is to ascertain and effectuate the legislature's intent. *Sullivan ex rel. Hightower v. Edwards Oil Co.*, 141 S.W.3d 544, 547 (Tenn. 2004). We must not broaden or restrict a statute's intended meaning. *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012) (quoting *U.S. Bank, N A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009))." *Id.* In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the legislature is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we should apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

## IV.  DISCUSSION

The statutory provision at issue in this dispute is Tennessee Code Annotated section 29-26-121(a)(1-2), which provides,

> (a)(1) Any person, or that person's authorized agent, asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.
>
> (2) The notice shall include:
>
> (A) The full name and date of birth of the patient whose treatment is at issue;
> (B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
> (C) The name and address of the attorney sending the notice, if applicable;
> (D) A list of the name and address of all providers being sent

a notice; and

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

The specific purpose of subsection (a)(2)(E) is not to provide a defendant with notice of a potential claim; rather, as the Supreme Court noted in *Stevens ex rel. Stevens v. Hickman Comty Health Care Srvcs., Inc.*, 418 S.W.3d 547 (Tenn. 2013), the subsection "serves to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records." *Id.* at 555. This investigatory tool advances the overall goal of section 29-26-121(a), which is to allow litigants the ability to engage in pre-suit negotiation and settlement so as to reduce litigation costs and resolve meritorious claims at the outset. *See also Jenkins v. Marvel*, 683 F. Supp. 2d 626, 638-39 (E.D. Tenn. 2010); *Hinkle v. Kindred Hosp.*, M2010-02499-COA-R3CV, 2012 WL 3799215 (Tenn. Ct. App. Aug. 31, 2012). Because subsection (a)(2)(E) serves an investigatory function, substantial, not strict, compliance is required. *Stevens*, 418 S.W.3d at 554. The *Stevens* Court wrote,

> A plaintiff's less-than-perfect compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E), . . . should not derail a healthcare liability claim. Non-substantive errors and omissions will not always prejudice defendants by preventing them from obtaining a plaintiff's relevant medical records. Thus, we hold that a plaintiff must substantially comply, rather than strictly comply, with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E).

*Stevens*, 418 S.W.3d at 555. However, "[b]ecause HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." *Id.* (citing 45 C.F.R. § 164.508(a)(1)).

In this case, the notice packet POA sent to Brightstar and Home Helpers included a cover letter directed to each provider. The letter identified the full name and date of birth of the patient whose treatment is at issue, the name and address of the claimant authorizing the notice and the source of the claimant's authority, and the name and address of the attorney sending the notice. The letter stated: "A list of the name and address of all providers being sent this notice is attached to this notice" and that "A HIPAA compliant medical authorization permitting you to obtain complete medical records from each other provider being sent a notice is attached to this notice." The letter identified the injuries that were alleged to have occurred under the provider's care and the alleged cause of those injuries; it concluded: "We believe this letter complies with the

letter and spirit of Tennessee Code Annotated §29-26-121. If you believe this notice (including attachments) is deficient in any way, please let us know and any defect will be promptly cured." As identified in the cover letter, a list of the names and addresses of all providers being sent the notice was attached to the cover letter. Further, multiple authorizations for each healthcare provider identified on the list were attached. Each authorization was identical except that the designation of the healthcare provider authorized to disclose the medical records identified is separately designated on each authorization.

There is no dispute that POA provided Defendants with notice more than 60 days before filing the complaint. The problem is that POA left blank lines on the authorization form as to who was authorized to receive the patient's records from the medical providers and others receiving notice. The one element missing from the face of POA's release was "the name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure." 45 C.F.R. § 164.508(c)(1)(iii). The question raised by POA is whether the "medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice" must be construed as a separate document in isolation from the remainder of the pre-suit notice packet provided or whether the materials in the pre-suit notice packet may be construed as one document.

While not requiring a specific form, the Tennessee Supreme Court has held that a medical authorization should contain the six elements of information set forth in 45 C.F.R. § 164.508(c)(1)(i)-(vi) in order for it to be "HIPAA-compliant." The six elements set forth in in 45 C.F.R. § 164.508(c)(1)(i)-(vi) are:

> (i)   A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
> (ii)   The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
> **(iii)   The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.**
> (iv)   A description of each purpose of the requested use or disclosure....
> (v)   An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure....
> (vi)   Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508(c)(1) (emphasis added). 45 C.F.R. § 164.508(b)(1) provides that a valid medical authorization must meet the requirements of § 164.508(c)(1) and (c)(2). Section 164.508(b)(2) states that an authorization is defective and invalid if it is incomplete because of a failure to comply with any of the requirements of paragraph (c) of § 164.508. The comments to the HIPAA regulations state that "[p]ursuant to § 164.508(b)(1), an authorization is not valid under the Rule unless it contains all of the required core elements and notification statements." Standards for Privacy of Individually Identifiable Health Information, 67 Fed. Reg. 53182, 53220-21 (Aug. 14, 2002). "HIPAA deems authorizations defective if not filled out completely." *Smith v. Wellmont Health Sys.*, No. E2017-00850-COA-R9-CV, 2018 WL 3343591, at *4 (Tenn. Ct. App. July 9, 2018).

Defendants contend that POA provided them with a HIPAA-deficient medical authorization in that it precluded them from being able to obtain Patient's medical records from the other healthcare providers who were sent notice (element (iii)). Additionally, they assert that the deficient authorization precluded them from using records in their own offices. Defendants argue that because POA's authorization failed to identify the person or class of persons authorized to receive records, a "core element" of HIPAA compliance, s*ee* 45 C.F.R. § 164.508(c)(1), POA failed to comply with the required statute.

POA contends that the notice packet sent to each of Defendants contains all of the information required by Tennessee Code Annotated section 29-26-121(a)(2). According to POA, while it is not apparent from the face of any single authorization form viewed in isolation that Defendants are the intended recipients of the records, the same notice that was sent to Home Keepers and Brightstar identifies each of the other medical providers as the intended recipients of the medical records. The information not identified on the authorization form is contained within the notice provided and is available to both Defendants and the contemplated disclosing healthcare provider. POA asserts that the medical authorization does not stand alone but, as evidenced by the terms of the cover letter, was attached to the letter as part of one packet. POA stresses that the cover letter makes clear that the letter and the "attached" authorization and provider list are to be construed together for compliance with Tennessee Code Annotated section 29-26-121. POA contends that, when read in combination, the cover letter and provided authorization were sufficient for Defendants to obtain records.

According to POA, Defendants were not prejudiced because there was no proof in the record of any failed attempt to gain the records of Patient. She asserts that the record contains no evidence that Defendants tried to use the authorization she provided, either alone or as part of the notice packet, nor did they present evidence that either of them were denied the records that they sought. She contends that there is no reason to believe that the disclosing health care provider would have rejected Defendants' records request

- 7 -

under those circumstances. POA asserts that the trial court's ruling runs counter to the policy of deciding cases on their merits and the Tennessee Supreme Court's statement in *Stevens* that a plaintiff's less than perfect medical authorization should not derail the merits of the plaintiff's suit in the pre-suit process.

POA further notes that the website of the Department of Health and Human Services contains a "frequently asked questions" section regarding HIPAA, which includes the following question and answer:

> Can an authorization be used together with other written instructions from the intended recipient of the information?
>
> Answer:
>
> A transmittal or cover letter can be used to narrow or provide specifics about a request for protected health information as described in an Authorization, but it cannot expand the scope of the Authorization. For example, if an individual has authorized the disclosure of "all medical records" to an insurance company, the insurance company could by cover letter narrow the request to the medical records for the last 12 months. The cover letter could also specify a particular employee or address for the "class of persons" designated in the Authorization to receive the information. By contrast, an insurance company could not by cover letter extend the expiration date of an Authorization, or expand the scope of information set forth in the Authorization.
>
> Created 9/24/03

www.hhs.qov/hipaa/for-professionals/faq/authorizations/479.html (last visited May 10, 2019). According to POA, the response, which references a "transmittal or cover letter" as capable of "provid[ing] specifics" is consistent with Tennessee law that "all writings that are a part of the same transaction are to be construed together." *See McCall v. Towne Square, Inc.*, 503 S.W.2d 180, 183 (Tenn. 1973). Construing the recipient-specific notice packet as a whole, POA argues that Defendants were each provided with all of the information required by the statute.

In order to substantially comply with the statute at issue, a plaintiff must provide a defendant with a HIPAA-compliant medical authorization form that is sufficient to allow the defendant to obtain the plaintiff's medical records from the other providers being sent the notice. *Wenzler*, 2018 WL 6077847 at *5. In this context, substantial compliance requires "a degree of compliance that provides the defendant with the ability to access

and use the medical records for the purpose of mounting a defense." *Lawson v. Knoxville Dermatology Grp., P.C.*, 544 S.W.3d 704, 711 (Tenn. Ct. App. 2017). "In determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Stevens*, 418 S.W.3d at 556; *see also, Jones v. Prof'l Motorcycle Escort Serv., LLC*, 193 S.W.3d 564, 572-73 (Tenn. 2006).

In *Martin v. Rolling Hills Hosp., LLC*, ___ S.W.3d ___, 2020 WL 2065528, (Tenn. Apr. 29, 2020), the Tennessee Supreme Court reaffirmed *Stevens*, holding that "prejudice is not a separate and independent element" but rather "a consideration relevant to determining whether a plaintiff has substantially complied. *Id.* at *7 (citing *Stevens*, 418 S.W.3d at 556). The *Martin* Court observed that

> [o]ne means of satisfying this burden [of demonstrating noncompliance resulting in prejudice] is by alleging that the plaintiff's section 121(a)(2)(E) medical authorization lacks one or more of the six core elements required by federal law for HIPAA compliance. Under federal law, a medical authorization is not HIPAA compliant if "[t]he authorization has not been filled out completely, with respect to" a core element. 45 C.F.R. § 164.508(b)(2)(ii). Without a HIPAA compliant medical authorization, a defendant would ordinarily be deprived of a benefit Section 121 confers, as it declares that "[a]ll parties . . . shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice." Tenn. Code Ann. § 29-26-121(d)(1). Although defendants must explain how they were prejudiced by noncompliance, defendants need not "test" incomplete and facially noncompliant medical authorizations. As we recognized in *Stevens*, obtaining medical records with a HIPAA noncompliant medical authorization would violate federal regulations and could result in the imposition of severe penalties. *Stevens*, 418 S.W.3d at 565 n.6; *see also Woodruff ex rel. Cockrell v. Walker*, 542 S.W.3d 486, 499 (Tenn. Ct. App. 2017) ("Because the penalties imposed on entities that wrongfully disclose or obtain private health information in violation of HIPAA are severe, the sufficiency of the plaintiffs' medical authorizations is imperative."), *perm. app. denied* (Tenn. Oct. 6, 2017); *J.A.C. ex rel. Carter v. Methodist Healthcare Memphis Hosps.*, 542 S.W.3d 502, 514-15 (Tenn. Ct. App. 2016) (stating that a health care liability defendant has no duty to assist a plaintiff to achieve

compliance with Section 121 or to test the validity of a medical authorization that is facially lacking a core element required for HIPAA compliance); *Dolman v. Donovan*, No. W2015-00392-COA-R3-CV, 2015 WL 9315565, at *5 (Tenn. Ct. App. Dec. 23, 2015) (rejecting the plaintiffs' argument that the medical providers could not have been prejudiced because they never attempted to obtain medical records with the deficient medical authorization provided), *perm. app. denied* (Tenn. May 6, 2016). As we emphasized in *Stevens*, plaintiffs, not defendants, are "responsible for complying with the requirements of [Section 121]." *Stevens*, 418 S.W.3d at 559.

*Martin*, 2020 WL 2065528, at *7.

In *Wenzler*, the court was faced with a pre-suit medical authorization that did not identify any particular person or class of persons to whom the covered providers could make the use or disclosure. 2018 WL 6077847, at *1. On appeal, we evaluated the authorization under the substantial compliance framework and concluded that the "omission was both substantive and significant." *Id.* at *6. We found that the authorization was "defective[,] not valid under HIPAA regulations[, and] did not permit the defendants to receive [Wenzler's] medical records." *Id.* We specifically ruled that leaving a medical authorization blank as to who can receive records from a covered entity renders the authorization ineffective. *Id.* Such a failure to make the designation requires dismissal.

As the trial court in the instant case recognized,

the *Wenzler* case is almost directly on point. You can't require the defendant to complete it. You can't require the defendant to prove that they attempted to use it. The failure to designate who was authorized to make the request, user disclosure, is a core element . . . . And so it's just really hard for me, as a trial court, when I've got specific language from a court above me . . . that this would be a non-compliant authorization, you know . . . .

In *J.A.C.*, we held that the authorization was invalid because it "did not list the person or class of persons to whom disclosure of information could be made." We found that "[t]he argument that a health care liability defendant should complete or "customize" a medical authorization that contains blanks has been specifically rejected by [the Court of Appeals]." 542 S.W.3d at 515. As in this case, the plaintiffs in *J.A.C.* argued that their authorizations "were sufficient when considered alongside the pre-suit notice letters

- 10 -

that accompanied the forms." *Id.* We dismissed that argument because "[s]everal Tennessee decisions have rejected the proposition [that] a healthcare liability defendant has a duty to assist a plaintiff achieve compliance or to test whether an obviously deficient HIPAA form would allow the release of records." *Id.* (citing *Stevens*, 418 S.W.3d at 559); *Dolman v. Donovan*, No. W2015-00392-COA-R3-CV, 2015 WL 9315565, at *5 (Tenn. Ct. App. Dec. 23, 2015).

Similarly, in *Lawson v. Knoxville Dermatology Grp, P.C.*, we affirmed the dismissal of a healthcare liability claim because the plaintiff's pre-suit medical authorizations failed to identify the providers authorized to <u>disclose</u> records—another "core element" under the federal regulations. 544 S.W.3d 704, 712 (Tenn. Ct. App. 2017); *see* 45 C.F.R. § 164-508(c)(1)(ii) ("A valid authorization . . . must contain at least the following elements . . . the name or other specific identification of the person(s) , or class of persons, authorized to make the requested use or disclosure . . . ."). The *Lawson* Court noted that the list of providers attached to the pre-suit notice letter did not "supplement the HIPAA authorization to satisfy the requirement provided in 45 C.F.R. § 164.508(c)(1)(ii)" because the federal regulations "specifically prohibit[] compound authorizations." *Id.* at 712.

In the case before us, POA failed to identify on the medical authorization the identity of the individual authorized to receive Patient's records. As in *Wenzler*, we conclude that this is an essential element. A medical authorization lacking a core element is not valid. When a pre-suit medical authorization is facially invalid, the recipient is per se prejudiced and bears no burden to use or correct the form. *See, e.g., Buckman v. Mt. States Health Alliance*, 570 S.W.3d 229, 239 (Tenn. Ct. App. 2018) (rejecting plaintiff's argument that defendants must have tested the invalid authorization to show prejudice). The record on appeal supports Defendants' arguments that POA's noncompliance precluded them from obtaining the decedent's medical records from all other providers named as defendants. *Martin*, 2020 WL 2065528, at *8 (citing *Parks v. Walker*, 585 S.W.3d 895, 900 (Tenn. Ct. App. 2018))[3] (holding that a medical authorization lacking core elements required by federal law for HIPAA compliance was not substantially compliant with section 121(a)(2)(E)), *perm. app. denied* (Tenn. Mar. 27, 2019); *Buckman*, 570 S.W.3d at 239 (same); *J.A.C.*, 542 S.W.3d at 513 (same). POA therefore failed to comply with section 29-26-121.

---

[3]In *Parks*, we observed that the plaintiff's response regarding the authorization form was "that each provider can look at the list of providers and should know that each of them also received their own authorization form allowing them to release, use, or disclose the material information. However, this is not what the law requires. In order to be effective, the authorization form must allow a medical provider to obtain records from the other providers." *Parks*, 585 S.W.3d at 899. As in *Parks*, POA's authorization did not allow Defendants to obtain Patient's records from the other providers given pre-suit notice.

Tennessee Code Annotated section 29-26-116 provides that "[t]he statute of limitations in health care liability actions shall be one (1) year as set forth in § 28-3-104" and that "in no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant." Tenn. Code Ann. § 29-26-116(a)(1), (a)(3). A plaintiff who complies with the notice provisions of Tennessee Code Annotated § 29-26-121, however, receives a 120-day extension of the applicable statute of limitations and statute of repose. Tenn. Code Ann. § 29-26-121(c). As we have determined, POA failed to substantially comply with the requirement of Tennessee Code Annotated section 29-26-121(a)(2)(E) to provide a HIPAA-compliant medical authorization with her pre-suit notice. Therefore, POA's noncompliance with the pre-suit notice requirements prevents her from relying on the 120-day extension of the relevant statute of limitations. *See Lawson*, 544 S.W.3d at 713 ("We note that inasmuch as the [plaintiffs] failed to comply with pre-suit notice requirements, they did not obtain the 120-day extension of the statute of limitations when they filed their complaint."). This cause must be dismissed with prejudice.

Tennessee Code Annotated section 29-26-121(b) provides that the court can, at its discretion, excuse compliance with subsection (a) "only for extraordinary cause shown." Our Supreme Court has explained the meaning of extraordinary cause as follows:

> The statute does not define "extraordinary cause," and the statute's legislative history does not indicate that the legislature intended to assign a meaning to that phrase other than its plain and ordinary meaning. "Extraordinary" is commonly defined as "going far beyond the ordinary degree, measure, limit, etc.' very unusual; exceptional; remarkable." Webster's New World Dictionary of the American Language, 516 (1966) . . . .

*Myers*, 382 S.W.3d at 310-111. In this case, POA failed to show any extraordinary cause sufficient to excuse her noncompliance with Tennessee Code Annotated section 29-26-121(a)(2)(E).

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed to the appellant, Alysia Reese McCracken Hancock.

_____

- 12 -

JOHN W. MCCLARTY, JUDGE